674 S.E.2d 524

**CAPITAL CITY INSURANCE COMPANY, Appellant,**

v.

**BP STAFF, INC., and Samuel Blanton
Phillips, III, Respondents.**

No. 4502.

Court of Appeals of South Carolina.

Heard Jan. 21, 2009.

Decided Feb. 13, 2009.

94

Mark A. Cullen, of West Palm Beach, FL, for Appellant.

D. Randle Moody, II, of Greenville, for Respondents.

PIEPER, J.

In this case, the trial court dismissed appellant Capital City Insurance Company's (Capital City) complaint of five counts of breach of contract against BP Staff, Incorporated (BP Staff) and one count of fraud against Samuel Blanton Phillips, III (Phillips), pursuant to Rules 12(b)(1), 12(b)(6), and 12(b)(8), SCRCP. We reverse the trial court's order and remand the case for further proceedings.

## FACTS/PROCEDURAL HISTORY

Capital City is a workers' compensation insurance company in Columbia, S.C. BP Staff is an employee leasing company wholly owned by Phillips and based in Greenville, S.C. Phillips was previously employed by SB Phillips Company (SB), attending to payroll and procurement of workers' compensation insurance for that company prior to starting BP Staff in July 2002.

In August 2002, BP Staff sought workers' compensation coverage through the South Carolina Department of Insurance Workers' Compensation Assigned Risk Insurance Plan and submitted an application that was assigned to Capital City. After reviewing the application, Capital City issued a policy in September 2002 to BP Staff and assigned it a higher premium than a new company would usually receive; BP Staff was assigned an "experience modifier" (modifier) of 1.33 rather than 1.0, meaning BP Staff would be charged an extra $33,000 for every $100,000 of payroll. In essence, Capital City viewed BP Staff as a successor company to SB because the overwhelming majority of workers on BP Staff's payroll were formerly at SB. Thus, Capital City applied SB's modifier to BP Staff's insurance policy.

BP Staff acquired two subsequent policies from Capital City in 2003 and 2004 for its South Carolina operations. Additionally, BP Staff acquired two more policies from Capital City in 2004 covering its Virginia, Georgia, and Alabama operations.

From September 2, 2002, through August 23, 2006, BP Staff appealed Capital City's application of the modifier to its policies in several administrative proceedings that culminated in affirmance of the modifier by the Administrative Law Court. BP Staff then appealed the modifier issue to the South Carolina Court of Appeals, which affirmed application of

the modifier on January 16, 2008. *See BP Staff, Inc. v. Capital City Ins. Co.*, Op. No.2008–UP–060 (S.C. Ct.App. Filed Jan. 16, 2008). However, at the time Judge Breeden's first order was filed on May 8, 2006, which dismissed Capital City's breach of contract and fraud claims, the modifier issue was still pending administrative appeal before the ALC; by the time he issued the June 3, 2007 order denying the motion to reconsider, the modifier issue had been ruled upon by the ALC and was pending on appeal to this court. We analyze this case based on the record before the trial court.

On July 13, 2005, Capital City commenced the present action, alleging five counts of breach of contract by BP Staff and one count of fraud by Phillips individually. BP Staff and Phillips responded with a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the South Carolina Rules of Civil Procedure, asserting the circuit court lacked subject matter jurisdiction, and that Capital City failed to state facts sufficient to constitute a cause of action. Additionally, BP Staff and Phillips later argued in their memorandum in support of dismissal that the case should be dismissed pursuant to Rule 12(b)(8), SCRCP, "because there was another action pending between the parties for the same claim."

At the hearing on November 28, 2005, Capital City argued that although its claimed damages would be impacted by application of the modifier, BP Staff was still in breach of contract for failure to pay any of its premium, with or without the modifier.[1] BP Staff denied it owed Capital City any premiums, including the undisputed amount derived from the 1.0 modifier. Additionally, Capital City contended the administrative court determining the modifier issue was without authority to grant any relief sought for breach of contract or fraud. As such, it asserted the two disputes were substantively different and the case should go forward notwithstanding the pending administrative issue. Alternatively, Capital City asked that the proceedings be stayed until a ruling from the "Appeals Court" was issued.[2]

---

1. At the hearing, Capital City claimed BP Staff owed approximately $400,000 in unpaid premiums if the 1.0 modifier was applied, or approximately $700,000 if the 1.33 modifier was applied.

2. Since the modifier issue was pending on appeal before the ALC at the time Capital City made this statement, we interpret Capital City's

On January 12, 2006, the trial court granted the motion to dismiss, but the order was not recorded with the clerk of court until May 8, 2006. After determining the modifier dispute was the "linchpin regarding any and all disputes between the parties," the court found that "the administrative process will afford the parties an opportunity to address their respective positions and seek a compromise of this matter." Consequently, the court held that, "absent an exhaustion of the [administrative] process, the instant action is premature and should be dismissed" pursuant to Rules 12(b)(6), and alternatively, pursuant to 12(b)(1), and 12(b)(8), SCRCP.

The trial court denied Capital City's motion to reconsider and reinstate on June 30, 2007. This appeal followed.

## ISSUES PRESENTED

I. Did the trial court err in dismissing the complaint pursuant to Rule 12(b)(6) when the complaint sets forth sufficient facts to support claims for breach of contract and for fraud?

II. Did the trial court err in dismissing the case for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) when it did so based on a lack of exhaustion of administrative remedies and when such doctrine of exhaustion is not jurisdictional?

III. Did the trial court err in dismissing the case based on the exhaustion of administrative remedies doctrine because the doctrine does not apply?

IV. Did the trial court err in dismissing the case pursuant to Rule 12(b)(8), based upon the exhaustion of administrative remedies doctrine when only the corporate defendant in this case is a party to the administrative proceedings and when the issues to be decided in the administrative proceeding and the trial court are not the same?

request to have meant the ALC rather than the South Carolina Court of Appeals.

## STANDARD OF REVIEW

 An appellate court applies the same standard of review as the trial court when reviewing the dismissal of an action pursuant to Rule 12(b)(6), SCRCP. *Doe v. Marion,* 373 S.C. 390, 395, 645 S.E.2d 245, 247 (2007). In considering a motion to dismiss a complaint based on a failure to state facts sufficient to constitute a cause of action, the trial court must base its ruling solely on allegations set forth in the complaint. *Id.* The question is whether, in the light most favorable to the plaintiff, and with every doubt resolved in his behalf, the complaint states any valid claim for relief. *Plyler v. Burns,* 373 S.C. 637, 645, 647 S.E.2d 188, 192 (2007). Dismissal under Rule 12(b)(6) is improper if the facts alleged and inferences reasonably deducible from them, viewed in the light most favorable to the plaintiff, would entitle the plaintiff to relief on any theory. *Doe,* 373 S.C. at 395, 645 S.E.2d at 247. Moreover, the complaint should not be dismissed merely because the court doubts the plaintiff will prevail in the action. *Id.* at 395, 645 S.E.2d at 248. The trial court's grant of a motion to dismiss will be sustained only if the facts alleged in the complaint do not support relief under any theory of law. *Ashley River Props. I, LLC v. Ashley River Props. II, LLC,* 374 S.C. 271, 278, 648 S.E.2d 295, 298 (Ct.App.2007).

 Pursuant to Rule 12(b)(1), SCRCP, the movant challenges the power of the court over the subject matter. "The question of subject matter jurisdiction is a question of law for the court." *Chew v. Newsome Chevrolet, Inc.,* 315 S.C. 102, 104, 431 S.E.2d 631 (Ct.App.1993) (citing *Bargesser v. Coleman Co.,* 230 S.C. 562, 96 S.E.2d 825 (1957)). We are free to decide questions of law with no deference to the trial court. *Catawba Indian Tribe of S.C. v. State of South Carolina,* 372 S.C. 519, 524, 642 S.E.2d 751, 753 (2007).

 Pursuant to Rule 12(b)(8), SCRCP, the movant seeks dismissal of a case because another action is pending between the same parties for the same claim. While we utilize the same standard of review as the circuit court in scrutinizing the application of Rule 12(b)(8), each of the components of the rule are determined as a matter of law and thus we apply a de novo standard of review to the grant or denial of this motion. *See Miami Sand & Gravel, LLC v. Nance,* 849 N.E.2d 671,

676 (Ind.Ct.App.2006). In other words, we may determine whether there is another action involving the same parties, claims (or subject matter), and remedies as a matter of law.

## LAW/ANALYSIS

The primary focus of this appeal is whether Capital City was required to exhaust the administrative process concerning the proper modifier to BP Staff's premium before it could proceed on an action for breach of contract and fraud.[3] Therefore, we address the threshold issues of subject matter jurisdiction and exhaustion of administrative remedies first even though the trial court apparently treated them as alternative holdings.

Capital City asserts that the trial court erred in dismissing the case for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) based upon the lack of exhaustion of administrative remedies. We agree.

Subject matter jurisdiction is defined as "the power to hear and determine cases of the general class to which the proceedings in question belong." *See Skinner v. Westinghouse Elec. Corp.*, 380 S.C. 91, 93–94, 668 S.E.2d 795, 796 (2008); *Ward v. State*, 343 S.C. 14, 17 n. 5, 538 S.E.2d 245, 246 n. 5 (2000). This authority is distinct from the doctrine of exhaustion of administrative remedies, which "is generally considered a rule of policy, convenience and discretion, rather than one of law, and is not jurisdictional." *Ward*, 343 S.C. at 17 n. 5, 538 S.E.2d at 246 n. 5 (internal quotation omitted). Additionally, the doctrine of exhaustion of administrative remedies is often leveraged "to avoid interference with the orderly performance of administrative functions." *Id.* at 19 n. 7, 538 S.E.2d at 247 n. 7. Consequently, a "failure to exhaust administrative remedies goes to the prematurity of a case, not subject matter jurisdiction." *Id.* at 17 n. 5, 538 S.E.2d at 246 n. 5.

---

3. We need not address whether the modifier issue is properly within the administrative review process since that issue is not in dispute. We only determine what impact that proceeding has on the trial court's determination to dismiss the circuit court action.

In the present case, Capital City's breach of contract and fraud claims are part of the general class of cases which the court of common pleas has jurisdiction to hear. The mere fact that Capital City was also engaged in an administrative proceeding regarding the modifier did not divest the circuit court of its power to hear and determine the claims of breach of contract and fraud. Thus, the trial court had subject matter jurisdiction to hear these types of claims and erred in dismissing Capital City's complaint pursuant to Rule 12(b)(1), SCRCP.

Next, Capital City asserts the trial court erred in dismissing the complaint pursuant to Rule 12(b)(6), SCRCP, based upon exhaustion principles because the complaint sets forth sufficient facts to support claims for breach of contract and for fraud, which are not subject to the requirement of exhaustion of administrative remedies. We agree.

The South Carolina Supreme Court has indicated that dismissal may be proper under Rule 12(b)(6), SCRCP, for failure to state a claim where the opposing party is required to exhaust its administrative remedies as a matter of law, but failed to do so. *See Unisys Corp. v. S.C. Budget & Control Bd.*, 346 S.C. 158, 176, 551 S.E.2d 263, 273 (2001) (stating that exhaustion of remedies precludes original resort to courts where an administrative agency is granted exclusive jurisdiction by the express terms of a statute). Thus, we must determine whether exhaustion of administrative remedies was required as a matter of law; if not, we next determine whether the court abused its discretion in dismissing the case until exhaustion of the administrative process is complete in order to assist in the disposition of the circuit court proceeding. *See Stanton v. Town of Pawley's Island*, 309 S.C. 126, 128, 420 S.E.2d 502, 503 (1992) ("[T]he question of whether to require the plaintiff to exhaust administrative remedies was a matter within the sound discretion of the trial judge," which will not be disturbed absent an abuse of discretion).[4]

---

4. In *Stanton*, the supreme court further explained that in order to reverse the trial court's order on the issue of exhaustion, the plaintiff "must show that as a matter of law, he was not required to exhaust administrative remedies or that the trial judge's ruling was based upon facts for which there is no evidentiary support." *Id.* at 128, 420 S.E.2d at 503.

Initially, we note "[a] party is not required to exhaust administrative remedies if the issue is one that cannot be ruled upon by the administrative body." *Charleston Trident Home Builders, Inc. v. Town Council of Town of Summerville*, 369 S.C. 498, 502, 632 S.E.2d 864, 867 (2006) (citing *Ward*, 343 S.C. 14, 538 S.E.2d 245). For example, in *Thomas Sand Co. v. Colonial Pipeline Co.*, 349 S.C. 402, 563 S.E.2d 109 (Ct.App.2002), respondent Colonial argued appellant Sand's failure to exhaust administrative remedies precluded a tort action against third parties. *Id.* at 412, 563 S.E.2d at 114–15. This court disagreed and held the following:

> If this were an appeal from the denial of the permit through the administrative process in which [the agency] was the appropriate fact finder, Thomas Sand would clearly be required to exhaust its administrative remedies prior to bringing suit.... However, in a tort action against a third party, no such exhaustion requirement exists. The question is not whether the permit would have been granted but whether Thomas Sand was damaged.... [The agency] is not the appropriate fact finder to answer this question. The jury is.
>
> The basic purpose of the exhaustion requirement, to allow the agency to render a final decision and set forth its reasons for the permit denial, would not assist the court in this instance. The alleged wrong is not one which the administrative process was designed to redress. "The doctrine of exhaustion of administrative remedies only comes into play when a litigant attempts to invoke the original jurisdiction of a circuit court to adjudicate a claim based on a statutory violation for which the legislature has provided an administrative remedy." A litigant need not exhaust administrative remedies where "there are no administrative remedies for the wrongs it assertedly suffered."

*Thomas Sand*, 349 S.C. at 413, 563 S.E.2d at 115 (quoting *Med. Mut. Liab. Ins. Soc. of Md. v. B. Dixon Evander & Assocs.*, 92 Md.App. 551, 609 A.2d 353 (Md.App.1992)).

Here, although Capital City was a party to an administrative proceeding related to the case at bar at the time of Judge Breeden's first order, its breach of contract and fraud claims are not based on a statute for which the legislature mandates the pursuit of an administrative remedy; in short, Capital

City's claims alleging breach of contract and fraud are not wrongs for which the administrative scheme was designed to redress.[5] Accordingly, as in *Thomas Sand,* Capital City was not required, as a matter of law, to exhaust the administrative process regarding the modifier before filing the current action in circuit court for breach of contract and fraud.

 Although the legislature has not mandated exhaustion of the claims, we recognize the trial court's perception that the administrative process, at least in part, would provide some assistance in resolution of the claims pending in the circuit court. Moreover, Capital City possibly could have secured a judgment in the circuit court before the proper modifier was determined and applied by the administrative process, thereby raising the specter of interference with administrative review. On the other hand, any applicable statute of limitations must also be considered. The court has broad discretion in its supervision over the progression and disposition of a circuit court case in the interests of justice and judicial economy. *See Williams v. Bordon's, Inc.,* 274 S.C. 275, 279, 262 S.E.2d 881, 883 (1980) ("The authority of the court to grant continuances and to determine the order in which cases shall be heard is derived from its power to hear and decide cases. This adjudicative power of the court carries with it the inherent power to control the order of its business to safeguard the rights of litigants."). While the court erred in basing its decision on mandatory exhaustion which was not applicable to this case, we may also determine in a nonmandatory exhaustion context whether the circuit court abused its discretion in ordering dismissal of the case over some less

5. The issue of exhaustion of administrative remedies has recently been addressed by this court in *Oakwood Landfill, Inc. v. South Carolina Department of Health and Environmental Control,* 381 S.C. 120, 671 S.E.2d 646 (2009) (Shearouse Adv. Sh. No. 4 at 51). As noted in the concurring opinion, "absent an exception, so long as there is an opportunity for completion and review of a matter, then the parties must avail themselves of the entire administrative process prior to seeking judicial relief." *Id.* at 68. However, the situation herein differs from that in *Oakwood* because no opportunity existed for completion or review of Capital City's breach of contract or fraud claims by the administrative process due to the type of claim involved; thus, Capital City's claims were not subject to mandatory exhaustion.

drastic remedy, such as a continuance or stay, in order to obtain the benefit of the administrative process.[6]

The United States Supreme Court has previously provided guidance resolving the apparent dilemma wherein a party's judicial action is caught between the rock of the statute of limitations and the hard place of continuing administrative proceedings that impact the judicial action. In *Carnation Co. v. Pacific Westbound Conference*, 383 U.S. 213, 86 S.Ct. 781, 15 L.Ed.2d 709 (1966), the Court held that an action should have been stayed rather than dismissed when the petitioner's treble damages claim "[could] not be easily reinstituted at a later time. Such claims are subject to the [s]tatute of [l]imitations and are likely to be barred by the time the [agency] acts." *Id.* at 787. Similarly, the Supreme Court previously held that, "[w]hen it appeared in the course of the litigation that an administrative problem, committed to the [agency], was involved, the court should have stayed its hand pending the [agency's] determination." *Gen. Am. Tank Car Corp. v. El Dorado Terminal Co.*, 308 U.S. 422, 433, 60 S.Ct. 325, 84 L.Ed. 361 (1940). The Supreme Court suggested the case should not be dismissed; rather, "the cause should be held pending the conclusion of an appropriate administrative proceeding." *Id.* We find this reasoning persuasive. Therefore, where a party would be harmed by the running of the statute of limitations or otherwise prejudiced if its claim is dismissed because a related matter is undergoing administrative review, a trial court seeking to withhold determination of a circuit court case pending resolution of an administrative proceeding that may impact the circuit court case should properly consider a stay or continuance of the judicial action until the administrative proceedings have concluded. Consequently, "[w]here suit is brought after the first administrative decision and stayed until remaining administrative proceedings have concluded[,] judicial resources are conserved and

---

6. We recognize the court's decision was based on mandatory exhaustion. However, due to some overlap in the court's language, we have analyzed the court's order from the perspective of a proceeding not requiring exhaustion as a matter of law. We apply an abuse of discretion standard to the decision to utilize the administrative process prior to disposition of the circuit court case.

both parties fully protected." *United States v. Mich. Nat'l Corp.*, 419 U.S. 1, 6, 95 S.Ct. 10, 42 L.Ed.2d 1 (1974).

 In the present case, the trial court dismissed Capital City's breach of contract and fraud claims due to the ongoing administrative proceedings concerning the modifier instead of staying or continuing the circuit court proceeding. However, the court's order does not reflect consideration given to any applicable statute of limitations. *See, e.g.*, S.C.Code Ann. §§ 15–3–530(1) & (7) (2005). A party should not be required to "roll the dice" on whether a collateral administrative proceeding will conclude prior to the running of an applicable statute of limitations in order to preserve a claim properly within the jurisdiction of the circuit court. Even utilizing an abuse of discretion standard based upon the nonmandatory exhaustion context of the breach of contract and fraud claims, we find Capital City would be prejudiced by dismissal in light of the problem posed by any applicable statute of limitations. Thus, the court abused its discretion in ordering a dismissal as opposed to a stay or continuance due to this prejudice.[7]

As previously indicated, as to the breach of contract and fraud claims, Capital City was not required to exhaust administrative remedies as a matter of law. This case is merely impacted by another administrative proceeding, not one itself requiring the exhaustion of the administrative process. Since the complaint adequately sets forth facts supporting the claims in this case, and since the court erred in its disposition of the exhaustion issue, dismissal under Rule 12(b)(6), SCRCP, was likewise improper.

Finally, Capital City asserts the trial court erred in dismissing the case pursuant to Rule 12(b)(8), SCRCP. We agree.

 In South Carolina, dismissal under Rule 12(b)(8) may be proper when there is (1) another action pending, (2) between the same parties, (3) for the same claim. Rule 12(b)(8), SCRCP. The rule has historic ties to a former

---

7. We note the possibility a dismissal, as opposed to a stay, in some circumstances may be upheld where there is some assurance there will be no prejudice to any rights of the parties involved; however, we need not reach this issue here today as this case does not present that situation. *See, e.g., Mich. Nat'l Corp.*, 419 U.S. at 5, 95 S.Ct. 10.

statute [8] providing a defendant a similar opportunity to demur; our supreme court traditionally interpreted that statute narrowly, stating that it only applied when there was identity of parties, causes of action and relief. *S.C. Public Serv. Comm'n v. City of Rock Hill*, 268 S.C. 405, 408, 234 S.E.2d 228, 229 (1977); *see also* James F. Flanagan, *South Carolina Civil Procedure* 96–97 (2d ed.1996). We find this approach consistent with modern day practice under rules similar to our Rule 12(b)(8). *See, e.g., Beatty v. Liberty Mut. Ins. Group*, 893 N.E.2d 1079, 1084 (Ind.App.Ct.2008) (applying 12(b)(8) dismissal "where the parties, subject matter, and remedies are precisely the same, and it also applies when they are only substantially the same."). Accordingly, we interpret the rule narrowly such that the claim must be precisely or substantially the same in both proceedings in order for the drastic remedy of dismissal to be appropriate under Rule 12(b)(8).[9]

Here, while we respectfully recognize that the administrative claim may have some relationship or impact upon the circuit court action, we also recognize that the administrative proceeding and the circuit court action are fundamentally and structurally different from each other. Therefore, based upon the record herein, dismissal of Capital City's action under Rule 12(b)(8), SCRCP, was improper.[10]

## CONCLUSION

Accordingly, we reverse the trial court order and remand this case for further proceedings. Since there was a request to stay that the circuit court did not address, the parties, upon

---

8. The former statute, Section 10-642(3) of the South Carolina Code (1962), read in part as follows: "The defendant may demur to the complaint when it shall appear upon the face thereof that: (3) There is another action pending between the same parties for the same cause."

9. Under the peculiar facts of this case, our conclusion pursuant to Rule 12(b)(8) would be the same even if we applied an abuse of discretion standard as to the trial court's Rule 12(b)(8) analysis.

10. Because of our disposition herein, we need not address appellant's claim that the court erred in applying its ruling equally to both BP Staff and Phillips.

remand, may request that the trial court impose a stay or continuance as maybe appropriate.[11]

**REVERSED AND REMANDED.**

WILLIAMS and GEATHERS, JJ., concur.

---

11. We note that BP Staff's petition for certiorari in the administrative matter regarding the modifier is currently pending before the South Carolina Supreme Court.