# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Pickens County, Appellant,

v.

South Carolina Department of Health and Environmental Control and MRR Pickens, LLC, Respondents.

Appellate Case No. 2017-000066

———

Appeal From the Administrative Law Court
Shirley C. Robinson, Administrative Law Judge

———

Opinion No. 5707
Heard May 6, 2019 – Filed January 8, 2020

———

## REVERSED AND REMANDED

———

Gary W. Poliakoff, of Poliakoff & Assoc., PA, of Spartanburg, Amy Elizabeth Armstrong, of S.C. Environmental Law Project, of Pawleys Island, and Michael Gary Corley, of S.C. Environmental Law Project, of Greenville, all for Appellant.

Robert Fredrick Goings and Jessica Lee Gooding, of Goings Law Firm, LLC, of Columbia, and Jessica James Orrick King, of Williams Mullen, of Columbia, all for Respondent MRR Pickens, LLC; Etta R. Linen and Karen Christine Ratigan, of Columbia, both for Respondent South Carolina Department of Health and Environmental Control.

———

**MCDONALD, J.:**  Pickens County (the County) appeals an Administrative Law Court (ALC) order dismissing its challenges to an unnoticed permit modification issued to MRR Pickens, LLC (MRR) by the South Carolina Department of Health and Environmental Control (DHEC).  The County argues the ALC erred in (1) dismissing the County's challenge to DHEC's permitting decision as untimely without considering whether DHEC complied with statutory and regulatory notice requirements; (2) dismissing based on the County's purported failure to exhaust administrative remedies; (3) granting MRR and DHEC's (collectively, Respondents) motions to dismiss based on evidence beyond the pleadings while denying the County the opportunity to conduct discovery; and (4) dismissing the case as untimely without resolving the status of the proposed intervenors.  We reverse and remand.

**Facts and Procedural History**

In early 2007, MRR was involved in negotiations with the County regarding the construction of a Class Two Landfill at 2180 Greenville Highway in the town of Liberty.[1]  MRR and the County entered into a Development Agreement and Host Agreement (collectively, the Agreements) for the Class Two Landfill in March 2007.[2]  The Agreements specify MRR "shall construct and operate a Long-term Construction and Demolition and Land-Clearing Debris Landfill" and that the County will serve as the host local government for such operation.

On September 19, 2008, DHEC issued a draft permit for the Class Two Landfill.  DHEC publicly noticed the draft permit in two local newspapers, the Easley Progress and The Pickens Sentinel, on September 24, 2008.  DHEC also sent notice to adjacent landowners, the County, and others on its mailing list.  After the public comment period expired, DHEC issued Solid Waste Permit LF2-00003 to

---

[1] DHEC classifies landfills that accept Construction and Demolition (C&D) waste as Class Two landfills.  *See* S.C. Code Ann. Regs. 61-107.19.IV (outlining requirements for this classification).

[2] Although the Host Agreement included in the record is not signed, it is incorporated by reference in the signed Development Agreement.

MRR for the Class Two Landfill[3] on November 3, 2008.[4] The 2008 Permit contained the following special condition as to the nature of waste authorized for disposal: "This permit is limited solely to the disposal of items listed in Appendix I of R. 61-107.19. All other wastes, including animal carcasses, are prohibited from disposal in this landfill." Regulatory Appendix I, as referenced in the special condition, lists "acceptable waste for class two landfills" and contains materials typically associated with land clearing, yard work, and construction, such as: brush and limbs, logs, rock, masonry, paint cans, glass, pipes, and plaster.

The County's Solid Waste Management Plan (SWMP), a local planning document required by state law,[5] prohibits "special waste" from being deposited in the County and states "[t]here are no operating Class Three Landfills in Pickens County."[6] The SWMP specifies "[a] Class Three Landfill is one designed to receive wastes such as household waste, sludge, incinerator ash[,] and certain industrial waste."

In 2014 and 2015, MRR and DHEC conducted a series of meetings and discussions regarding modifications to the landfill design approved in the 2008 Permit.[7] While MRR was designing its modifications and communicating with DHEC, MRR misrepresented to the County and the Pickens County Planning Commission the nature of its plan for the landfill facility and operation. Dan Moore of MRR appeared before the Planning Commission on January 12, 2015,

---

[3] The County did not request final review by the DHEC Board on the decision to issue the 2008 Permit or ask to be notified of any future decisions relating to the 2008 Class II Permit as issued.

[4] The permit's effective date is November 18, 2008.

[5] *See* S.C. Code Ann. § 44-96-80 (setting forth the requirements for county or regional solid waste management plans).

[6] DHEC classifies landfills accepting municipal solid waste as Class Three landfills. *See* S.C. Code Ann. Regs. 61-107.19.V (outlining requirements for this classification).

[7] From 2008 through 2014, MRR requested and obtained permit extensions, informing DHEC each year that the economic downturn warranted postponement of development of the landfill.

for the purpose of securing a land use approval, and stated there were "no changes" from the Class Two Landfill design approved in 2008. He made no mention of MRR's ongoing meetings with DHEC, certain engineering reports related to the permit modification MRR was discussing in the meetings with DHEC, or coal ash. When questioned about a landfill liner, Moore represented no liner would be required.

On March 30, 2015, MRR applied to DHEC for a "minor modification" of the 2008 Permit, requesting an option to install a liner and associated leachate collection system for a portion of the Highway 93 Class Two Landfill.[8]

After determining MRR's application to modify the 2008 Permit met the regulatory definition of a "minor" permit modification, DHEC issued a permit modification (the Permit Modification) on August 10, 2015. This "minor modification" authorized the following changes from the 2008 Permit:

> • The addition of a landfill liner, a characteristic of Class Three Landfills not present in any other Class Two landfill in the state;

_____

[8] DHEC's landfill regulations define the term "modification" to include changes to a solid waste landfill as follows:

> a. "Minor modification" means a change that keeps the permit current with routine changes to the facility or its operations, or an administrative change; and,
>
> b. "Major modification" means a change that substantially alters the facility or its operations, e.g., tonnage increase above 25%, any volumetric capacity increase, alternate designs that vary from the design prescribed in this regulation.

S.C. Code Ann. Regs. 61-107.19, Part I, 48. A major permit modification requires public review and comment while a minor permit modification does not. R.61-107.19, Part IV, 1.2; Part I, D.2.c.

• Design changes from Class Two to Class Three characteristics, including changes to the final landfill cover;

• Elimination of language prohibiting "all other wastes" and replacement with language authorizing "any other waste approved by the Department"; and

• Allowance for disposal of "special wastes," defined as "nonresidential or commercial solid wastes, other than regulated hazardous wastes, that are either difficult or dangerous to handle and require unusual management at municipal solid waste landfills."[9]

Notably, the requested modifications to the 2008 Permit did not seek to change the existing permitted landfill classification from a Class Two (construction and demolition debris) to Class Three (municipal solid waste) landfill. And because DHEC labeled this action as only a minor permit modification, DHEC deemed public notice and comment unnecessary under its solid waste regulations. Rather, DHEC determined it was only required to provide notice to MRR and to any affected persons who had requested in writing to be notified.[10]

The County did not receive notice of these modifications prior to DHEC's issuance of the Permit Modification. During this time period, MRR's engineering consultant submitted several engineering drawings and reports to DHEC reflecting a plan to convert the 2008 Permit to allow modification from Class Two Landfill characteristics to those of a Class Three Landfill. These reports note the following

---

[9] *See* S.C. Code Ann. § 44-96-390 (setting out the approval procedures for landfills accepting special wastes).

[10] *See* S.C. Code Ann. § 44-1-60(E)(1) ("Notice of a department decision must be sent by certified mail, returned receipt requested to the applicant, permittee, licensee, and affected persons who have requested in writing to be notified. Affected persons may request in writing to be notified by regular mail or electronic mail in lieu of certified mail. Notice of staff decisions for which a department decision is not required pursuant to subsection (D) must be provided by mail, delivery, or other appropriate means to the applicant, permittee, licensee, and affected persons who have requested in writing to be notified.").

observation from MRR's consultant: "During recent meetings between MRR and DHEC, it was confirmed that a modification of the Class Two Landfill Permit to meet the requirements of Regulation R.61.107.19 Part V Class Three Landfills would require a minor permit modification."

Months after the Permit Modification had been issued, the County learned MRR might be changing the design of the Highway 93 Landfill to prepare it to accept coal ash. Gerald Wilson, Public Works Director for the County, then submitted a Freedom of Information Act request and sought a meeting with DHEC regarding the Highway 93 Landfill. On December 15, 2015, DHEC staff met with County officials, including Wilson, and informed them the 2008 Permit had been modified in August 2015. On January 11, 2016, DHEC emailed a copy of the Permit Modification to Wilson. On March 23, 2106, the County submitted a request for administrative review to DHEC. On April 21, 2016, DHEC declined to conduct a final review conference.

On February 1, 2016, MRR filed a lawsuit (*MRR Pickens, LLC v. Pickens County, et al.*, civil action number 2016-CP-39-100) against the County and members of the Planning Commission. This provided the County with the opportunity to depose Kent Coleman, then director of the Division of Mining and Solid Waste Management at DHEC, who signed both the 2008 Permit as well as the 2015 Permit Modification. Regarding the distinction between minor and major permit modifications, Coleman

- Admitted the definition of major modification in the relevant regulation includes alternate designs.

- Admitted the definition of minor modification does **not** include alternate designs.

- Admitted that in an August 10, 2015 letter accompanying the Permit Modification, he characterized the Permit Modification as an "alternate liner design" and "design change."

- Admitted that when DHEC determines a proposed landfill change to be a major modification, DHEC follows "our normal process, which would include [notice to] adjacent owners, concerned parties, local governments."

Coleman later engaged in the following exchange:

> Q. In answers to Ms. King's questions one time today, you said this was a "new design for the landfill." Is that a fair statement?
>
> A. Yeah, I mean it is.
>
> Q. Okay.
>
> A. It was a new design.
>
> Q. And I wrote down also a quote earlier today when your answer to Ms. King's questions that this was "essentially the same design as a Class Three."
>
> A. Yes, I recall saying that, yes.
>
> Q. Alright. And that is basically the change from the [2008 Permit] to the 2015 [Permit ] [M]odification was essentially the same design as a Class Three. Is that right?
>
> A. Yes, uh-huh.
>
> Q. So in other words, what we're doing is changing a Class Two by adding Class Three features. It became essentially the same design as a Class Three.
>
> (objection)
>
> A. The design became very similar to a Class Three, yes.

Coleman also testified regarding the wastes that could be disposed of in MRR's proposed landfill under the Permit Modification, admitting that:

> • Construction and Demolitions (C&D) landfills are not required to have liners.

• MRR's landfill would be the first commercial Class Two landfill in South Carolina to have a liner.

• Coleman knew MRR was considering placing coal ash into this landfill when it applied for the Permit Modification.

• Coal ash would not have been allowed or accepted under the 2008 Permit.[11]

• The Permit Modification application requested to accept "certain special wastes" into this landfill, even though such wastes, by statute, must be placed in Class Three Landfills.

• MRR submitted stability calculations that would be appropriate for coal ash, in addition to stability calculations for C&D waste, so it was clear to DHEC that MRR was planning to put both types of waste in the modified landfill.

On May 19, 2016, the County filed a request for a contested case hearing with the ALC. DHEC moved to dismiss. Subsequently, MRR filed motions to dismiss and

---

[11] Coal ash requires special handling due to its propensity to create dust, contain toxic substances (such as mercury, lead, and arsenic), and contaminate groundwater and surface water. As such, coal ash qualifies as a "special waste" under South Carolina law and is generally unsuitable for disposal in a Class Two landfill. *See, e.g.*, S.C. Code. Ann. § 58-27-255 (providing "coal combustion residuals that result from an electrical utility, an electric cooperative, a governmental entity, a corporation, or an individual producing electricity for sale or distribution by burning coal must be placed in a commercial Class 3 solid waste management landfill, unless the coal combustion residuals are: (1) located contiguous with the electric generating unit; (2) intended to be beneficially reused; (3) placed into beneficial reuse; or (4) placed in an appropriate landfill which meets the standards of the Department of Health and Environmental Control Regulation 61-107, and that is owned or operated by the entity that produced the electricity which resulted in the coal combustion residuals").

to stay discovery. On August 18, 2016, the County, filed a motion to intervene on behalf of various County property owners (Neighboring Property Owners). On September 7, 2016, the ALC held a telephone conference with the parties, and granted MRR's motion to stay discovery. The ALC held the motion to intervene in abeyance pending the court's decision on the motions to dismiss. Following a hearing on the motions to dismiss, the ALC granted the motions in a December 12, 2016 order, finding the County did not timely fulfill the procedural requirements for bringing a contested case before the ALC. The ALC further found the County's failure to file a timely request for final review and participate in the Department's review process foreclosed any contested case action before the ALC. Regarding the County's request for final review to the DHEC Board, the ALC stated "the County's request was filed 226 days after the staff decision was issued, ninety-nine days after the meeting where the decision was discussed with the County, and seventy-two days after the decision was emailed to the County." The ALC held the County did not state a legally valid or compelling reason for its failure to timely file a request for review and, therefore, the case did not warrant the application of equitable tolling.

The County appealed on January 11, 2017. On March 29, 2017, the Neighboring Property Owners moved to intervene as parties to the appeal. This court denied the motion to intervene.

**Standard of Review**

The Administrative Procedures Act (APA) provides the standard for judicial review of cases decided by the ALC. S.C. Code Ann. § 1-23-610(C); *S.C. Coastal Conservation League v. S.C. Dep't of Health and Envtl. Control*, 380 S.C. 349, 360, 669 S.E.2d 899, 904 (Ct. App. 2008), *rev'd on other grounds*, 390 S.C. 418, 702 S.E.2d 246 (2010). An appellate court "may reverse the decision of the ALC where it is in violation of a statutory provision or it is affected by an error of law." *Kiawah Dev. Partners, II v. S.C. Dep't of Health & Envtl. Control*, 411 S.C. 16, 28, 766 S.E.2d 707, 715 (2014). The question of subject matter jurisdiction is a question of law for the court. *Capital City Ins. Co. v. BP Staff, Inc.*, 382 S.C. 92, 99, 674 S.E. 2d 524, 528 (Ct. App. 2009).

**Law and Analysis**

**I. Notice**

The County argues the ALC erred in dismissing its challenge to the DHEC permitting decision as untimely prior to resolving whether DHEC had complied with the statutory and regulatory notice procedures applicable to its decision. We agree.

The ALC found the County failed to timely comply with the filing requirements set forth in section 44-1-60 of the South Carolina Code, which sets out the procedure through which DHEC staff decisions may be appealed through DHEC and to the ALC in the form of a contested case. The notice and filing provisions applicable to the County's appeal include:

> The staff decision becomes the final agency decision fifteen calendar days after notice of the staff decision has been mailed to the applicant, unless a written request for final review accompanied by a filing fee is filed with the department by the applicant, permittee, licensee, or affected person.

S.C. Code Ann. § 44-1-60(E)(2).

> No later than sixty calendar days after the date of receipt of a request for final review, a final review conference must be conducted by the board, its designee, or a committee of three members of the board appointed by the chair. If the board declines in writing to schedule a final review conference or if a final review conference is not conducted within sixty calendar days, the staff decision becomes the final agency decision, and an applicant, permittee, licensee, or affected person requests pursuant to subsection (G) a contested case hearing before the [ALC]. The department shall set the place, date, and time for the conference; give the applicant and affected persons at least ten calendar days' written notice of the conference; and advise the applicant that evidence may be presented at the conference.

S.C. Code Ann. § 44-1-60(F).

> An applicant, permittee, licensee, or affected person may file a request with the [ALC] for a contested case hearing

within thirty calendar days after: (1) notice is mailed to the applicant, permittee, licensee, and affected persons that the board declined to hold a final review conference; or (2) the sixty calendar day deadline to hold the final review conference lapses and no conference has been held; or (3) the final agency decision resulting from the final review conference is received by the parties.

S.C. Code Ann. § 44-1-60(G).

The ALC concluded the County's appeal was untimely because it did not appeal the DHEC staff decision on the "minor" permit modification to the DHEC Board within fifteen days, as required by § 44-1-60. Thus, according to the ALC, the County failed to exhaust its administrative remedies, necessitating dismissal. On cursory review, this rationale may seem logical; however, it is problematic here because the ALC failed to undertake the prerequisite analysis of whether these time restraints apply at all here due to DHEC's misclassification of the permit modification as "minor." In so classifying the modification, DHEC has effectively permitted a Class III landfill without the required statutory notices by simply labeling the action as a "minor" modification of a "Class II" permit—despite the proposed landfill's actual design characteristics and the wastes its operators intend to accept.

As previously stated, the public notice requirements for major modifications differ substantially from those for minor modifications of an existing permit. *See* S.C. Code Ann. Regs. 61-107.19, Part IV, 1.2; Part I, D.2.c. (stating a major permit modification requires public review and comment while a minor permit modification does not). The pertinent regulatory language addressing DHEC's notice obligations provides:

> (1) Notice of all applications submitted to the Department *for the initial construction and major modifications of Class Two and Class Three landfills* shall be published by the applicant once in a newspaper of general circulation in the area of the proposed landfill project. Notice for Class Two landfill application shall be published as provided in Part IV, Section H.3. Notice for new Class Three landfills that accept municipal solid waste shall be published as provided in S.C. Code Section 44-96-470 and Part V, Subpart H.3.a. of this

regulation within 15 days of filing the permit application. Notice for all other new Class Three landfills shall be published as provided in Part V, Subpart H.3.b.

(2)  All notices shall contain the following:

(a) Name and address of the applicant;

(b) The location of the proposed activity to include the county, roads and crossroads.  (Class Three landfills shall provide a location map of the proposed site);

(c) The nature of the proposed activity;

(d) *A description of the proposed site or a description of the proposed major modification*;

(e) An explanation of the type(s) of waste that will be accepted;

(f) Department locations (Central Office and appropriate Regional Office) where a copy of the permit application or draft permit, as appropriate, can be viewed during normal working hours;

(g) The Department's address and contact name for submittal of comments and inquires;

(h) The approximate tonnage/year expected for disposal at the landfill; and,

(i) The proposed life of the landfill.

(3) *The Department will send a notice of receipt of the permit application by regular mail to all adjoining landowners of the proposed landfill.*

Part I. General Requirements, SC ADC 61-107.19 Part I (emphasis added).

The filing deadlines of § 44-1-60 are contingent upon DHEC's compliance with the procedural and notice requirements of its own regulations. *See* e.g., S.C. Code Ann. § 44-1-60(B) ("The department staff shall comply with all requirements for public notice, receipt of public comments and public hearings before making a department decision. To the maximum extent possible, the department shall use a uniform system of public notice of permit applications, opportunity for public comment and public hearings."). Our supreme court reiterated this in *South Carolina Coastal Conservation League v. South Carolina Department of Health & Environmental Control*, 390 S.C. 418, 702 S.E.2d 246 (2010), in which the Coastal Conservation League sought review of a critical area permitting decision more than fifteen days after DHEC issued the staff decision. DHEC failed to notify the Coastal Conservation League as required by statute; thus, the time limitations for review did not start to run until DHEC corrected its notice error. *Id.* at 430, 702 S.E.2d at 253. The plain language of § 44-1-60(A) supports this conclusion here as well: "All department decisions involving the issuance, denial, renewal, suspension, or revocation of permits . . . shall be made using the procedures set forth in this section." The procedures in § 44-1-60 particularly emphasize public notification, as reflected in § 44-1-60(B). Only after DHEC issues a staff decision in compliance with the procedural and notice dictates of its own regulations and of § 44-1-60 subsections (A) through (E), does subsection (E)(1) trigger the fifteen day deadline for an appeal of the decision to the DHEC Board. *See also Leventis v. S.C. Dep't of Health & Envtl. Control*, 340 S.C. 118, 143 n.14, 530 S.E.2d 643, 657 n.14 (Ct. App. 2000) ("DHEC's failure to provide adequate notice that the financial assurance regulations were still being considered excused Sierra Club from requesting a hearing [on those regulations].").

The ALC relied on the fact that the County received actual notice of the permit modification months after it was issued, yet did not take action on this notice within the fifteen day period prescribed by § 44-1-60(E)(2). However, nothing in § 44-1-60 suggests the fifteen day period for appealing a DHEC staff decision begins to run upon a party's simply learning of a permit action. To the contrary, the time period begins to run only after DHEC issues a staff decision in compliance with applicable statutory and regulatory notice safeguards.

DHEC argues it had no obligation to notify the County of the "minor" modification to the 2008 Permit because the County never requested to be notified as an "affected person" with respect to any DHEC staff decision regarding the Highway 93 Class Two Landfill. Although the County does not dispute that it never formally requested to be notified as an affected person, the County argues the relevant consideration here is whether the Modified Permit involved a major or

minor modification.  For a "major modification" request—which the County asserts has occurred here—DHEC was required to publish notice of the Permit Modification and mail notice (by regular mail) to adjoining landowners.  DHEC's own representative has admitted the Permit Modification meets the regulatory definition of a major modification.  Thus, we find DHEC's labeling of the Permit Modification as minor denied contemporaneous notice and participation opportunities that DHEC's own regulations required be provided to both the public and the adjacent Neighboring Property Owners.  Accordingly, the ALC erred in dismissing the County's challenge to the DHEC permitting decision as untimely because DHEC failed to comply with the notice procedures applicable to its decision to, in reality, permit a Class III landfill.[12]

## II.  Discovery

Next, the County argues the ALC improperly accepted evidence from outside the pleadings against the County while denying the County the right to undertake discovery.[13]  The County further asserts the ALC erred in resolving conflicting evidence in Respondents' favor.  We agree.

The ALC failed to notify the parties it would consider affidavits and extra-pleading evidence but accepted such evidence in considering Respondents' Rule 12 motions.  Our appellate courts have held repeatedly that a trial court's failure to "fairly apprise" a plaintiff that the court would consider material outside the pleadings in resolving a motion to dismiss is grounds for reversal.  *See*, *e.g.*, *Baird*, 333 S.C. at 528, 511 S.E.2d at 74 ("The first indication that County's 12(b)(6) motions would be converted to summary judgment motions was the trial court's order of dismissal.  Under these facts, the trial court erred in converting County's 12(b)(6) motions into motions for summary judgment."); *Higgins v. MUSC*, 326 S.C. 592, 486 S.E.2d 269 (Ct. App. 1997) (holding the plaintiffs had not been "fairly apprised" that the trial court would consider material outside the pleadings in

---

[12] This analysis applies to the ALC's dismissal on exhaustion grounds as well.  Until DHEC complies with its own regulatory requirements for the requested major modification, no exhaustion requirement is triggered.

[13] Although the County served discovery requests and deposition notices prior to dismissal, MRR moved to stay all discovery during the pendency of the ALC's consideration of the motions to dismiss.  The ALC granted MRR's motion to stay discovery.

support of the defendant's 12(b)(6) motion).  Our ruling on the motions to dismiss resolves the ALC's need to stay discovery.[14]

**Conclusion**

Based on the foregoing, the ALC's order dismissing the County's challenge to the permit modification is reversed and this matter is remanded to the Administrative Law Court for further proceedings.

**REVERSED AND REMANDED.**

**LOCKEMY, C.J. and SHORT, J., concur.**

---

[14] On remand, in addition to lifting the discovery stay, the ALC will also be able to address the concerns of the Neighboring Property Owners.  DHEC's own notice regulation "for the initial construction and major modifications of Class II and Class III landfills" mandates "(3) [t]he Department will send a notice of receipt of the permit application by regular mail to all adjoining landowners of the proposed landfill."