# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

South Carolina Public Interest Foundation and John Crangle, individually and on behalf of all others similarly situated, Appellants,

v.

Alan Wilson, Attorney General for the State of South Carolina; Willoughby & Hoefer, P.A.; and Davidson, Wren & DeMasters, P.A., Respondents.

Appellate Case No. 2021-000343

———————

Appeal from Richland County
R. Kirk Griffin, Circuit Court Judge

———————

Opinion No. 28112
Heard April 6, 2022 – Filed September 14, 2022

———————

## REVERSED AND REMANDED

———————

James Mixon Griffin, Badge Humphries, and Margaret Nicole Fox, all of Griffin Humphries LLC, of Columbia, and James G. Carpenter, of The Carpenter Law Firm, of Greenville, for Appellants.

John S. Simmons, of Simmons Law Firm, LLC, of Columbia, Gerald Malloy, of Malloy Law Firm, of Hartsville, and James Todd Rutherford, of Rutherford Law Firm, LLC, of Columbia, for Respondent Willoughby & Hoefer, P.A.; William H. Davidson II and Kenneth P. Woodington, both of Davidson, Wren & DeMasters, P.A., of Columbia, for Respondent Davidson, Wren &

DeMasters, P.A.; Attorney General Alan McCrory Wilson, Solicitor General Robert D. Cook, and Deputy Solicitor General J. Emory Smith Jr., all of Columbia, for Respondent Alan Wilson.

_____

**JUSTICE JAMES:**   South Carolina Attorney General Alan Wilson retained Respondents Willoughby & Hoefer, P.A., and Davidson, Wren & DeMasters, P.A., (collectively, the Law Firms) to represent the State in litigation against the United States Department of Energy (DOE).   Wilson and the Law Firms executed a litigation retention agreement, which provided that the Law Firms were hired on a contingent fee basis.   When the State settled its claims with the DOE for $600 million, Wilson transferred $75 million in attorneys' fees to the Law Firms. Appellants challenged the transfer, claiming it was unconstitutional and unreasonable.   The circuit court dismissed Appellants' claims for lack of standing, and we certified the case for review of the standing issue.   The merits of the underlying case are not before us.

## Background

In 2002, the State brokered an agreement with the DOE concerning the storage of weapons-grade plutonium at the Savannah River Site in Aiken, South Carolina. *See* 50 U.S.C. § 2566.  The agreement required the DOE to achieve a certain mixed-oxide fuel production objective by January 1, 2016.  § 2566(d)(1).  When the DOE failed to meet this objective, Wilson retained the Law Firms to pursue recovery of statutory damages.

Wilson's litigation retention agreement (Fee Agreement) with the Law Firms contains three provisions relevant to this appeal.  The first provision states the Law Firms will be reimbursed for certain costs and expenses.  The second provision sets forth varied contingency percentages based on the State's gross recovery, the type of representation provided, and the court in which the matter was heard.  The third provision requires Wilson to seek judicial approval of attorneys' fees and costs "[w]hen possible[.]"

The Law Firms continued to litigate on the State's behalf for more than four years.  On August 28, 2020, litigation ended with the execution of a settlement agreement (the Settlement Agreement).  The Settlement Agreement required the DOE to immediately pay the State $600 million, "inclusive of interest, with each party to bear its own costs, attorney fees, and expenses."  Three days later, Wilson announced he would pay the Law Firms $75 million in attorneys' fees pursuant to

the Fee Agreement.  This amount included costs and expenses and represented 12.5% of the State's gross recovery.

Seeking to enjoin payment to the Law Firms, Appellants filed a complaint and motion for preliminary injunction against Wilson.  Appellants alleged that because attorneys' fees were not awarded by court order or settlement, South Carolina Code subsection 1-7-150(B)[1] requires the entire $600 million settlement to be deposited in the State's General Fund.  Appellants also argued the attorneys' fee amount was patently unreasonable and, therefore, requires court approval.  When Appellants learned Wilson had already disbursed the $75 million,[2] they amended their complaint to name the Law Firms as defendants and filed another motion for preliminary injunction.

Judge Alison Lee denied Appellants' motion and found they lacked public importance standing.  Specifically, Judge Lee concluded the critical element of a "need for future guidance" was absent:

> Any judicial ruling on this matter would be entirely limited to the [Fee Agreement] and payment for services performed pursuant to this single contract. . . . Public importance standing is inappropriate here because there is no ruling the Court might make that would assist other courts resolving future arguments regarding outside litigation.

Judge Lee also found Appellants lacked so-called "derivative standing" because unlike Wilson, who has authority to represent the State as its chief legal officer, Appellants "have no authority to represent the State['s] interests in this proceeding."

Respondents promptly moved to dismiss Appellants' complaint for lack of standing.  Judge Kirk Griffin granted the motion, ruling "Judge Lee's findings [as to standing] are dispositive and require dismissal. . . . Nonetheless and in the

---

[1] Subsection (B) provides, "All monies, except investigative costs or costs of litigation awarded by court order or settlement, awarded the State of South Carolina by judgment or settlement in actions or claims brought by the Attorney General on behalf of the State or one of its agencies or departments must be deposited in the general fund of the State[.]"  (2005).

[2] The fact that the fee has already been paid is irrelevant to the issues on appeal. Likewise, the amount of the fee has no bearing on our analysis.

alternative, this Court . . . concurs with and adopts Judge Lee's well-reasoned analysis and findings." Appellants appealed, and we certified the case for review.

We previously declined to exercise original jurisdiction over the merits of Appellants' claims. Therefore, our review is limited to (1) whether Judge Lee's finding that Appellants lack standing constitutes the law of the case and (2) whether Appellants have standing. We express no view as to the merits of Appellants' claims.

## Standard of Review

A motion to dismiss for lack of standing challenges the court's subject matter jurisdiction. *See Capital City Ins. Co. v. BP Staff, Inc.*, 382 S.C. 92, 99, 674 S.E.2d 524, 528 (Ct. App. 2009). Whether subject matter jurisdiction exists is a question of law, which this Court is free to decide with no particular deference to the circuit court. *Id.* (quoting *Chew v. Newsome Chevrolet, Inc.*, 315 S.C. 102, 104, 431 S.E.2d 631, 631 (Ct. App. 1993)); *Catawba Indian Tribe of S.C. v. State*, 372 S.C. 519, 524, 642 S.E.2d 751, 753 (2007). Therefore, on appeal, we review the circuit court's findings de novo. *See Capital City*, 382 S.C. at 99, 674 S.E.2d at 528; *Catawba Indian Tribe*, 372 S.C. at 524, 642 S.E.2d at 753.

## Discussion

### I.   Law of the Case

"The doctrine of the law of the case applies to an order or ruling which finally determines a substantial right." *Shirley's Iron Works, Inc. v. City of Union*, 403 S.C. 560, 573, 743 S.E.2d 778, 785 (2013) (quoting *Weil v. Weil*, 299 S.C. 84, 89, 382 S.E.2d 471, 473 (Ct. App. 1989)). The doctrine does not, however, generally apply to "an interlocutory order which merely decides some point or matter essential to the progress of the cause, collateral to the issues in the case[.]" *Id.* (quoting *Weil*, 299 S.C. at 89, 382 S.E.2d at 473). Therefore, despite the "long-standing rule in this State that one judge of the same court cannot overrule another[,]" *Charleston Cnty. Dep't of Social Servs. v. Father*, 317 S.C. 283, 288, 454 S.E.2d 307, 310 (1995), interlocutory orders "may be reconsidered and corrected by the court before entering a final order on the merits." *Shirley's Iron Works*, 403 S.C. at 573, 743 S.E.2d at 785 (quoting *Weil*, 299 S.C. at 89, 382 S.E.2d at 473).

If a plaintiff lacks standing, he does not have the right to proceed to the merits of his claim against the defendant. Therefore, when a circuit court finds that a party lacks standing and includes that finding in an order, the order determines a substantial right. In this regard, Judge Lee's order does more than "merely decide[] some point or matter essential to the progress of the cause, collateral to the issues in

the case[.]" *Id.* at 573, 743 S.E.2d at 785. However, because an order denying a motion for preliminary injunction is interlocutory, *see* S.C. Code Ann. § 14-3-330(4) (2017), Judge Lee's order did not <u>finally</u> determine a substantial right of Appellants. *Id.*; *see* Rule 54(b), SCRCP; *cf. Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) ("[T]he findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits."). Therefore, we decline to invoke the law of the case doctrine. *See State v. Hewins*, 409 S.C. 93, 113 n.5, 760 S.E.2d 814, 824 n.5 (2014) (stating the law of the case doctrine "is a discretionary appellate doctrine with no preclusive effect on successive trial proceedings").

## II.    Standing

This Court has consistently acknowledged that even without an allegation of particularized injury, "standing may be conferred upon a party when an issue is of such public importance as to require its resolution for future guidance." *Sloan v. Sanford*, 357 S.C. 431, 434, 593 S.E.2d 470, 472 (2004); *see S.C. Pub. Interest Found. v. S.C. Transp. Infrastructure Bank*, 403 S.C. 640, 645, 744 S.E.2d 521, 524 (2013); *ATC S., Inc. v. Charleston Cnty.*, 380 S.C. 191, 199, 669 S.E.2d 337, 341 (2008); *Baird v. Charleston Cnty.*, 333 S.C. 519, 531, 511 S.E.2d 69, 75 (1999); *Davis v. Richland Cnty. Council*, 372 S.C. 497, 500, 642 S.E.2d 740, 741-42 (2007); *S.C. Pub. Interest Found. v. S.C. Dep't of Transp.* (*SCDOT*), 421 S.C. 110, 118-19, 804 S.E.2d 854, 859 (2017).

"The key to the public importance analysis is whether a resolution is needed for future guidance." *ATC S.*, 380 S.C. at 199, 669 S.E.2d at 341; *see SCDOT*, 421 S.C. at 119, 804 S.E.2d at 859; *Vicary v. Town of Awendaw*, 425 S.C. 350, 359, 822 S.E.2d 600, 604 (2018). Courts must cautiously balance competing interests—the citizenry's need to hold public officials accountable for alleged injustices and "the concomitant integrity of government action"—to determine whether the issue presented is "inextricably connected to the public need for court resolution for future guidance." *SCDOT*, 421 S.C. at 118-19, 804 S.E.2d at 858 (quoting *Sloan v. Greenville Cnty.*, 356 S.C. 531, 551, 590 S.E.2d 338, 349 (Ct. App. 2003)); *ATC S.*, 380 S.C. at 199, 669 S.E.2d at 341; *see Sanford*, 357 S.C. at 434, 593 S.E.2d at 472. Only then can the issue "transcend[] a purely private matter and rise[] to the level of public importance." *ATC S.*, 380 S.C. at 199, 669 S.E.2d at 341.

By claiming Wilson improperly disbursed state settlement funds, Appellants indisputably allege an issue of public importance. *See, e.g.*, *SCDOT*, 421 S.C. at 119, 804 S.E.2d at 859; *Sloan v. Sch. Dist. of Greenville Cnty.*, 342 S.C. 515, 524,

537 S.E.2d 299, 303 (Ct. App. 2000). Therefore, the linchpin of our analysis is whether a need for future guidance exists.

Appellants' complaint presents a threshold issue of the Attorney General's statutory authority to enter contingency fee agreements with private law firms. This issue will inevitably arise again in the future because Wilson has seven other litigation retention agreements with private attorneys. These agreements are currently listed on the Attorney General's website, and five contain contingency fee provisions.[3] Although the agreements differ in some respects, all contingency fee provisions persist. For example, Wilson recently announced a $300 million settlement with opioid distributors.[4] The litigation retention agreement in that case contains a contingency fee provision identical to the one here. There is a need for future guidance as to whether subsection 1-7-150(B) authorizes the Attorney General to enter into contingency fee agreements. We therefore hold Appellants have public importance standing.[5]

## Conclusion

We reverse the circuit court's finding that Appellants lack public importance standing and remand for the circuit court to consider the merits of Appellants' claims. We reiterate that nothing in this opinion should be construed as a comment or conclusion on the merits.

**REVERSED AND REMANDED.**

**BEATTY, C.J., KITTREDGE, HEARN and FEW, JJ., concur.**

---

[3] *Litigation Retention Agreements*, S.C. Att'y Gen., https://www.scag.gov/litigation-retention-agreements/ (last visited July 28, 2022) (listing contingency fee agreements for Opioid Manufacturers, Pharmacy Benefit Managers, Opioid Distributors, Insulin Pricing, and Google Advertising Technology).

[4] *See Attorney General Alan Wilson: Drug Distributors and Johnson & Johnson Commit to $26 Billion Opioid Agreement*, S.C. Att'y Gen. (Feb. 25, 2022), https://www.scag.gov/about-the-office/news/attorney-general-alan-wilson-drug-distributors-and-johnson-johnson-commit-to-26-billion-opioid-agreement/.

[5] Because we decide this appeal on public importance grounds, we need not address derivative standing. *See Futch v. McCallister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999).