0562

SHELLEY CONSTRUCTION COMPANY, INC., Respondent, v. SEA GAR-DEN HOMES, INC., and United States Fidelity and Guaranty Company, Appellants, and SHELLEY CONSTRUCTION COMPANY, INC., Respondent, v. SEA GARDEN HOMES, INC., Frances Rinard, and United States Fidelity and Guaranty Company, Appellants.

(336 S. E. (2d) 488)

Court of Appeals

*David R. Gravely* and *Judith J. Honeycutt* both of *Bellamy, Rutenberg, Copeland, Epps, Gravely & Bowers, P.A.,* Myrtle Beach, *for appellants.*

*John C. Thompson* of *Thompson & Henry,* Conway, *for respondent.*

Heard June 17, 1985.

Decided Oct. 22, 1985.

BELL, Judge:

These consolidated actions were brought by Shelley Construction Company to enforce mechanic's liens securing a debt owed by Sea Garden Homes, Inc., for work performed by Shelley on Sea Garden's property. Prior to commencement of the actions, Sea Garden filed written undertakings, with United States Fidelity and Guaranty Company as surety, to discharge the liens as provided by Section 29-5-110, Code of Laws of South Carolina, 1976, as amended. Upon filing of the undertakings, the Clerk of Court for Horry County entered two orders discharging the real property from the liens. Thereafter, Shelley instituted suit against Sea Garden and the surety to recover on the undertaking. No notice of pendency of the actions was filed.

Prior to the call of the cases for trial, Sea Garden and the surety moved to dismiss the actions on the ground that Shelley failed to file a notice of pendency of the actions within six months of the date it ceased to furnish labor or materials to Sea Garden. The circuit judge ruled that notice of pendency of the action need not be filed where the property has been discharged from the lien prior to commencement of the action. He therefore denied the motions to dismiss and ordered the cases to trial. The jury returned a verdict of $50,000 in favor of Shelley. The court entered judgment for that amount plus attorney's fees against Sea Garden and the surety. They appeal. We affirm.

In South Carolina, any person to whom a debt is due for labor performed or materials furnished in the erection, alteration or repair of a building or structure upon real estate is given a lien on the property to secure payment of the debt. Code Section 29-5-10. The lien arises, inchoate, when the labor is performed or the materials are furnished. *Williamson v. Hotel Melrose*, 110 S. C. 1, 96 S. E. 407 (1918). However, if the person claiming the lien was employed by someone other than the owner, he must notify the owner of the furnishing of the labor or material for the lien to attach. Code Section 29-5-40; *Lowndes Hill Realty Co.*

*v. Greenville Concrete Co.*, 229 S. C. 619, 93 S. E. (2d) 855 (1956).

In order to perfect and enforce the lien against the property, the person claiming it must: (1) serve and record a certificate of lien within ninety days after he ceases to furnish labor or materials, Code Section 29-5-90; (2) bring suit to foreclose the lien within six months after he ceases to furnish labor or materials, Code Section 29-5-120; and (3) file notice of pendency of the action within six months after he ceases to furnish labor or materials, Code Section 29-5-120. *Multiplex Building Corp., Inc. v. Lyles*, 268 S. C. 577, 235 S. E. (2d) 133 (1977); *Lowndes Hill Realty Co. v. Greenville Concrete Co., supra.* If these steps are taken, the person claiming the lien may foreclose against the property to satisfy the debt. On the other hand, if he fails to take any one of these steps, the lien against the property is dissolved. Code Sections 29-5-90 and 29-5-120. This does not, however, preclude him from maintaining an action on the debt. Code Section 29-5-420.

The owner may discharge the property from the lien at any time after the certificate of lien is filed by himself filing a written undertaking equal to one and one third of the amount claimed by the person asserting the lien. Code Section 29-5-110. This written undertaking must be secured by cash, government securities or a surety bond. *Id.* If such an undertaking is filed, the lien on the property is discharged and the cash, securities or surety bond take the place of the property and are subject to the lien. *Id.* This "bonding out" procedure permits the owner to convey or encumber the property free and clear of the mechanic's lien.

The question presented in this case is whether a notice of pendency of the action must be filed, if, prior to commencement of the action, the property has been discharged from the lien by the filing of an undertaking pursuant to Code Section 29-5-110.

The issue must be decided according to the terms of the statute, since mechanic's liens are purely statutory and can only be acquired and enforced in accordance with the conditions of the statute creating them. *Multiplex Building Corp., Inc. v. Lyles, supra.*

In this case, Shelley sought to enforce its mechanic's lien

against the surety bond, not the real property, which had been released from the lien by filing a secured undertaking prior to the commencement of the action. Thus, the relevant statute is Code Section 29-5-110, the statute creating a lien against the surety bond when an undertaking has been filed. Section 29-5-110 states, in pertinent part:

> Unless suit for enforcement of the lien is commenced as required by § 29-5-120, the undertaking herein required shall be null and void ... and such ... surety bond filed shall be released from the lien herein provided.

Section 29-5-120 provides:

> Unless a suit for enforcing the lien is commenced, and notice of pendency of the action is filed, within six months after the person desiring to avail himself thereof ceases to labor on or furnish labor or material for such building or structures, the lien shall be dissolved.

The Supreme Court has held Section 29-5-120 imposes two requirements in order to preserve a mechanic's lien against the property: (1) the claimant must commence suit for enforcing the lien within six months; and (2) the claimant must file notice of pendency of the action within six months. *See Multiplex Building Corp., Inc. v. Lyles, supra.* By its plain language, Section 29-5-110 incorporates only one of these two requirements: viz., that suit for enforcement of the lien be commenced within six months. Section 29-5-110 makes no reference to filing a notice of pendency of the action.

Sea Garden asks us to construe Section 29-5-110 as if it said:

> Unless suit for enforcement of the lien is commenced, *and notice of pendency of the action is filed,* as required by § 29-5-120, the undertaking herein required shall be null and void ... and such ... surety bond filed shall be released from the lien herein provided.

We are not at liberty, under the guise of construction, to alter the plain language of the statute by adding words which the Legislature saw fit not to include. *Cf. Creech v.*

*South Carolina Public Service Authority,* 200 S. C. 127, 20 S. E. (2d) 645 (1942). Our duty is to apply the statute according to its own terms. *Multiplex Building Corp., Inc. v. Lyles, supra.* Since Section 29-5-110 says nothing about filing a notice of pendency of the action, we hold that no such notice must be filed to preserve the lien if, prior to commencement of an action to enforce the lien, the property has been discharged from the lien pursuant to that section.

Our conclusion is supported not only by the plain language of the statute, but also by the legislative history of the mechanic's lien law.

Section 29-5-120 was originally enacted as Section 7 of Act No. 144 of 1869, 14 Stat. at Large 220. The original provision read:

> Unless a suit for enforcing the lien is commenced within ninety days after the person desiring to avail himself thereof ceases to labor on, or furnish labor or material for such building or structures, the lien shall be dissolved.

In 1873 this section was amended by striking the words "ninety days" and inserting the words "six months" in lieu thereof. *See* Act No. 276 of 1873, 15 Stat. at Large 350. The original mechanic's lien law contained no provision for "bonding out" the property once the certificate of lien had been filed.

In 1950, the General Assembly amended the statute to include the "bonding out" procedure. *See* Act No. 948 of 1950, 46 Stat. at Large 2294, 2295. If a secured undertaking was filed, the lien on the property was discharged and a lien attached to the security filed with the undertaking. *Id.* The 1950 amendment went on to provide:

> Unless suit for enforcement of the lien is commenced as required by Section 8737 [now Section 29-5-120], the undertaking herein required shall be null and void ... and such ... surety bond filed, shall be released from the lien herein provided.

At the time of the 1950 amendment, Section 8737 [now Section 29-5-120] required only that suit to enforce the lien be commenced within six months; there was no requirement

that notice of pendency of the action be filed. Thus, at the time of its enactment, Section 29-5-110 clearly did not require filing of a notice of pendency of the action.

In 1957, the General Assembly amended Section 29-5-120 [then Section 45-262 of the 1952 Code] by adding the requirement that notice of pendency of the action be filed within six months. *See* Act No. 167 of 1957, 50 Stat. at Large 181. Significantly, however, it left the language of Section 29-5-110 unchanged. Had the Legislature wished to amend Section 29-5-110 in the same way it amended Section 29-5-120, it could easily have done so by adding the words "and notice of pendency of the action is filed" to Section 29-5-110. We infer from this failure to amend Section 29-5-110 that the Legislature intended the requirements for preserving the lien when the property has been "bonded out" to remain unchanged.

This reading of the legislative intent also makes practical sense. The purpose of a notice of pendency of an action is to inform a purchaser or encumbrancer that a particular piece of real property is subject to litigation. *Wooten v. Seanch*, 187 S. C. 219, 196 S. E. 877 (1938). The filing of a *lis pendens* places a cloud on title which prevents the owner from freely disposing of the property before the litigation is resolved. *Cf. Chatham Estates v. American Nat'l Bank*, 171 N. C. 579, 88 S. E. 783 (1916). On the other hand, the purpose of the "bonding out" procedure is obviously to remove the property from litigation over the debt for labor or materials furnished. Section 29-5-110 releases the property from the mechanic's lien so the owner can deal with it freely without having to wait for resolution of the dispute over the debt.

If the claimant seeks to enforce a mechanic's lien against the property, it makes perfect sense to require a *lis pendens*, since the property may be affected by the outcome of the litigation. If the property has been released from the lien by "bonding out," the lien is no longer enforced against the property. In these circumstances, there is no need to file a *lis pendens*, since the property will not be affected by the litigation. On the contrary, to require filing of a *lis pendens* after the property has been released from the lien would defeat the purpose of the "bonding out" procedure by tying up the

property in litigation. Thus, we are persuaded the Legislature intended to do exactly what a plain reading of the statutes indicates: i.e., to require filing of a *lis pendens* when the lien is enforced against the property, but not when it is enforced against the substitute security under the "bonding out" procedure.

Accordingly, the judgment of the circuit court is

Affirmed.

SHAW and CURETON, JJ., concur.