# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

TCC of Charleston, Inc., Appellant/Respondent,

v.

Concord and Cumberland, LLC, Concord & Cumberland
HPR, Leo Hall, Diane Hall, Bea H. Smith, Margaret C.
Pope, William D. Foster, Jr., Gene G. Foster, Mattison J.
MacGillivray, Teresa MacGillivray, Pamela L. Vaughn,
Nelia A. Patricio, Trustee of the Nelia A. Patricio
Revocable Trust Agreement, Stuart D. Reeves, Edward
T. Strom, Barbara K. Henderson, James R. Clarke, Paul
A. Brim, Robert K. Seidl, Jennifer M. Seidl, Robert
Kenneth Seidl, II, M. Bert Storey, Thomas R. Mather,
Edward T. Strom, 304 Concord & Cumberland, LLC,
Marion M. Simpson f/k/a Marion Moore McDonald
Simpson, Kathy Gardner, Gregory J. Gardner, Freeman
Waterfront Properties, LLC, Jo-Ann Cooper, Betty Y.
Segal, Robert M. Levin, and Bonita K. Levin, Donald D.
Leonard, Betty L. Beatty, Mattellen, LLC, and Thomas
R. Debnam, Trustee of the Trust Agreement of Thomas
R. Debnam, Respondents,

Of which Concord & Cumberland HPR is the
Respondent/Appellant.

Appellate Case No. 2021-000272

―――――――――

Appeal From Charleston County
Mikell R. Scarborough, Master-in-Equity

―――――――――

Opinion No. 6106
Heard June 11, 2024 – Filed March 19, 2025
Withdrawn, Substituted, and Refiled July 30, 2025

―――――――――

Jaan Gunnar Rannik, of Epting & Rannik, LLC; and Michelle N. Endemann, both of Charleston, for TCC of Charleston, Inc.

F. Cordes Ford, IV, of Womble Bond Dickinson (US) LLP, of Charleston, for Concord and Cumberland, LLC; Leo Hall; Diane Hall; Bea H. Smith; Margaret C. Pope; William D. Foster; Jr., Donald D. Leonard; Mattellen, LLC; Thomas R. Debnam; Gregory J. Gardner; Freeman Waterfront Properties, LLC; Jo-Ann Cooper; Betty Y. Segal; Robert M. Levin; Bonita K. Levin; Robert Kenneth Seidl, II; M. Bert Storey; Thomas R. Mather; 304 Concord & Cumberland, LLC; Marion M. Simpson; Kathy Gardner; Edward T. Strom; Barbara K. Henderson; James R. Clarke; Paul A. Brim; Robert K. Seidl; Jennifer M. Seidl; Gene G. Foster; Mattison J. MacGillivray; Teresa MacGillivray; Pamela L. Vaughn; Nelia A. Patricio; and Stuart D. Reeves.

Robert Andrew Walden and Henry E. Grimball, both of Womble Bond Dickinson (US) LLP, of Charleston, for Concord and Cumberland HPR.

William Cole Shannon, of Charleston; Edward D. Buckley, Jr. and Russell Grainger Hines, of Clement Rivers, LLP, of Charleston; all for Betty L. Beatty.

W. Siau Barr, Jr., of Clement Rivers, LLP, of Charleston, for 304 Concord & Cumberland, LLC and Betty L. Beatty.

**VINSON, J.:** TCC of Charleston, Inc. (TCC) appeals the master-in-equity's (the master's) order denying its motions to amend a statement of account and for attorney's fees and granting its motion to confirm an arbitration award. It also

appeals the master's order granting the motion for summary judgment, motion for dismissal, motion to deposit funds, and motion for attorney's fees filed by Concord & Cumberland Horizontal Property Regime (the HPR) and individual unit owners of a condominium owned by the HPR. TCC appeals the master's orders granting partial summary judgment and awarding attorney's fees to Betty Beatty, an individual who owned one of the units in the condominium, and awarding attorney's fees to unit owners other than Beatty. TCC argues the master erred in (1) finding TCC's mechanic's lien was not timely served and dissolving the mechanic's lien due to an error on the statement of account, (2) not allowing discovery before dismissing the lien, (3) holding the HPR's deposit of a judgment into court stopped interest from accruing, (4) denying TCC's motion for attorney's fees, and (5) granting attorney's fees to the HPR. The HPR cross appealed, arguing the master erred in granting TCC's motion to confirm the arbitration award, which the HPR asserts occurred after the circuit court erred in failing to vacate or modify TCC's arbitration award, because the arbitration panel disregarded a sworn lien waiver and release when issuing its award to TCC, failed to issue a reasoned award, and allocated a portion of the award to a project that was not part of TCC's claim. We affirm the master's order granting the HPR's motions to dismiss and for summary judgment, granting TCC's motion to confirm the arbitration award, and denying TCC's motions to amend statement of account and for attorney's fees. We also affirm the Master's order granting summary judgment to Beatty. We reverse and remand the master's award of attorney's fees to the HPR and to Beatty.

**FACTS AND PROCEDURAL HISTORY**

This appeal arises from a repair project at condominiums located at 175 Concord Street in Charleston. The HPR, which owned the condominiums, hired TCC as the general contractor on the project. On February 27, 2014, the HPR and TCC signed a contract with a guaranteed maximum price (GMP) of $3,923,939.00. Once work on the project began, TCC discovered that the condition of the condominium differed from what TCC contemplated when it submitted its bid, and TCC requested 134 proposed change orders (PCOs) during the course of the work. The HPR paid $1,953,145.00 of the amount billed in the PCOs, which increased the total price of the project to $5,877,084.00 by February 2016. The HPR paid the PCOs on a cost-plus basis.[1]

---

[1] "Cost-plus" meaning the HPR would pay TCC the cost of its services and an additional amount for profit.

On June 6, 2016, TCC filed a complaint for foreclosure of mechanic's lien, breach of contract, and quantum meruit against the HPR. TCC also filed a lis pendens, notice of mechanic's lien, a statement of account, and a motion to compel arbitration. TCC requested $2,385,503.57 plus interest for labor and materials used on the project and unpaid by the HPR. This amount arose from Payment Application 18, a payment application being a request for payment for ongoing work. Both the complaint and the statement of account, which TCC president John David Griffith signed, stated the last day of work on the project was March 17, 2016. On June 10, 2016, TCC filed an amended complaint and notice of mechanic's lien along with the original statement of account against the HPR and the individual unit owners. The amended complaint and statement of account added the unit owners as parties and stated the last day of work on the project was March 17, 2016. An amended lis pendens was filed June 16, 2016. An affidavit of service shows that Beatty was served with the lis pendens, complaint, and notice of the mechanic's lien on June 22, 2016.

The HPR filed an answer to the amended complaint, but it agreed to arbitration pursuant to its contract with TCC. On December 30, 2016, the circuit court entered a consent order staying the action and allowing arbitration to proceed between the HPR and TCC. The arbitration panel conducted a merits hearing in January 2019, and the parties submitted proposed orders. On April 16, 2019, the arbitration panel issued the arbitration award finding TCC "performed additional work outside the scope of the work which was not approved and was not paid," and that TCC was entitled to payment for PCOs 143, 144, 144R, and unpaid retainage. The panel awarded TCC $2,023,074.45 for the claims asserted in the arbitration proceeding.

TCC filed a motion for prejudgment interest, costs of arbitration, and attorney's fees and costs, along with affidavits from its counsel. The HPR filed a motion for reconsideration, arguing the form of the award was improper because the panel failed to issue a reasoned award.[2] The HPR also contended no agreements between the parties amended their contract to change its form from a GMP to a cost-plus contract, and therefore "no reliable evidence . . . exists between the

---

[2] *Tully Constr. Co./A.J. Pegno Constr. Co., J.V. v. Canam Steel Corp.*, No. 13 CIV. 3037(PGG), 2015 WL 906128, at *15 (S.D.N.Y. Mar. 2, 2015) (stating a reasoned award is "an award that is provided with or marked by the detailed listing *or mention of* expressions or statements offered as a justification . . . [for] the decision of the [arbitrator]" (alterations in original) (quoting *Cat Charter, LLC v. Schurtenberger*, 646 F.3d 836, 844 (11th Cir. 2011)).

parties which contemplated that TCC would bill for and recover its total costs for [the] project." On June 12, 2019, TCC filed a motion to lift the stay of the case in the circuit court so it could seek confirmation of the arbitration award and pursue its other claims against the HPR and the unit owners. The HPR filed a motion for change of award in the arbitration proceeding, arguing the arbitration award compensated TCC for Payment Application No. 17 in the amount of $648,542.79, a payment application TCC did not dispute the HPR had already paid. To preserve its right to judicial review, the HPR also filed a motion to vacate the arbitration award or, alternatively, to modify or correct the arbitration award in the circuit court, arguing that the panel did not render a reasoned award, made an evident miscalculation, and manifestly disregarded the law as to the enforceability of sworn signed lien waivers. The HPR argued that the "Conditional Release and Waiver of Lien" (the lien waiver) that was signed by TCC and attached to Pay Application No. 17 and other Pay Applications barred TCC's recovery.

On August 12, 2019, the arbitration panel issued a corrected arbitration award, stating the arbitration award included amounts from PCOs 143, 144R, and 146, and that in calculating interest the panel mistakenly referred to Pay Application No. 17 instead of the PCOs included in the award. In response to the HPR's argument regarding the lien waiver, the panel stated, "Credible testimony at the hearing was presented . . . that TCC and [the] HPR agreed to address outstanding PCOs and TCC's claims for additional costs at the end of the project." The panel went on to find,

> [S]ome of the PCOs and TCC's claims for additional costs were subsequently submitted and paid by HPR which arose and existed as of the date of the execution of the [lien waiver]. Knowing that TCC had signed [the lien waiver], [the] HPR nonetheless agreed to PCOs; signed the Change Orders; and made payment for claims that may have otherwise been released or barred by the [lien waiver]. [The] HPR cannot now claim that the [lien waiver] bar[s] TCC's claims.

The panel issued a corrected award of $2,016,066.73 for TCC and included an explanation of how it reached that award. The award included work TCC completed on a stone tower with an inefficiency adjustment of twenty-five percent. The panel found the contract between TCC and the HPR did not contain a prevailing party attorney's fee provision and no statutory authority was provided as a basis for attorney's fees. Therefore, the arbitration panel found it did not have jurisdiction to hear motions for attorney's fees, and TCC and the HPR's requests for

attorney's fees were both denied without prejudice so they could seek attorney's fees in the circuit court. The panel awarded TCC for costs for arbitration fees and other expenses. It also corrected the interest calculation and found TCC was entitled to recover interest on the sum of PCOs 143, 144R, and 146 and retainage.

The HPR filed a motion for change of the corrected arbitration award, arguing it did not pay TCC for PCOs or claims submitted after signing the lien waiver attached to Pay Application No. 17. It also contended the arbitration award should not include costs for the stone tower because a claim for its cost was never submitted to arbitration. The arbitration panel issued an order denying the HPR's motion for change on October 23, 2019. The HPR then filed a motion to vacate the corrected arbitration award or, alternatively, to modify or correct the corrected arbitration award in the circuit court, again arguing the arbitration panel manifestly disregarded the law, did not issue a reasoned award, and issued the award based on matters not submitted to the panel.

The circuit court heard the motion to vacate on December 16, 2019, and issued an order denying the HPR's motion on January 30, 2020. The circuit court found that the award was a reasoned award because the factual inferences and legal conclusions in the nine-page order were sufficient to support the panel's findings. It found the arbitration panel did not manifestly disregard the law in declining to enforce the lien waiver based on the explanation given in the corrected arbitration award and "a contemporaneous email from [the] HPR's agent confirming the agreement." The circuit court also found no error or manifest disregard of the law in the arbitration panel's finding that the GMP provided in the contract was overcome by the agreement between TCC and the HPR to fix out-of-scope items and compensate TCC on a time and material basis. The circuit court found that the arbitration panel did not err in including TCC's work related to the stone tower in its award because the work was within the scope of the arbitration agreement. Finally, the circuit court found no technical issue with the arbitration award to make it subject to modification or correction under section 15-48-140 of the South Carolina Code (2005).

The HPR filed a motion to reconsider, alter, or amend judgment, which the circuit court denied on May 1, 2020. In its order denying the motion to reconsider, the circuit court clarified that it did not rely on the email sent by the HPR's agent when issuing its order denying the HPR's motion to vacate, stated its reference to the email was harmless error because it had a separate basis for concluding there was no manifest disregard of the law, and redacted the reference to the email from its previous order. The HPR appealed the orders to this court, but the appeal was

dismissed because the circuit court did not confirm the arbitration award when it ruled, and therefore the issue was not immediately appealable.

On December 6, 2019, during the stay of the mechanic's lien cause of action due to arbitration, the HPR filed a motion for summary judgment, arguing that the action against it to foreclose the mechanic's lien could not stand because a mechanic's lien could not be filed against the HPR under the Horizontal Property Act.[3] On May 8, 2020, after the stay was lifted, Beatty filed a motion for partial summary judgment, arguing TCC's mechanic's lien dissolved according to section 29-5-90 of the South Carolina Code (2007) when TCC failed to serve her with the notice or certificate of lien on or before June 15, 2016, within ninety days from the last day of work, March 17, 2016. On May 11, 2020, the HPR filed a motion to deposit funds, requesting the circuit court allow it to deposit TCC's arbitration award into the court to stop the accrual of interest pursuant to Rule 67, SCRCP. On May 22, 2020, TCC filed a motion to amend its pleading.

The circuit court heard the HPR's motion for summary judgment, Beatty's motion for partial summary judgment, the HPR's motion to deposit funds, and TCC's motion to amend on May 28, 2020. The circuit court granted TCC's motion to amend its complaint but did not rule on the remaining motions, instead referring the matter to the master. On August 24, 2020, TCC filed its second amended complaint, which did not include a reference to March 17, 2016, as the last day of work on the project. The second amended complaint included causes of action for foreclosure of mechanic's lien, breach of contract, and equity. TCC also filed a motion to confirm its arbitration award. On September 11, 2020, TCC filed a motion for attorney's fees as the prevailing party in arbitration.

The HPR filed a motion to dismiss TCC's second amended complaint, arguing a mechanic's lien could not be filed against the HPR; TCC's breach of contract and equity claims should be dismissed for lack of subject matter jurisdiction because they were adjudicated in arbitration; and the mechanic's lien cause of action should be dismissed based on insufficient service of notice of the lien. The HPR also filed a motion for attorney's fees related to the mechanic's lien claim. On October 1, 2020, TCC filed a motion to amend a statement of account "to correct the date last worked and to conform the statement of account to an issue submitted to and decided by the arbitration panel."

The master held a hearing on the parties' motions on November 5, 2020. During the hearing, the master denied TCC's motion to amend the statement of account,

---

[3] S.C. Code Ann. §§ 27-31-10 to -430 (2007 & Supp. 2024).

finding TCC could not change the last day of work that was set forth in the verified statement of account, which was March 17, 2016. The master then found the lien was not perfected according to the statute because TCC failed to serve notice of the lien on all owners within ninety days of the last day of work. The master dismissed the mechanic's lien cause of action against the HPR and stated he would confirm TCC's arbitration award.

On November 30, 2021, TCC submitted a response and objections to filings and submissions of Beatty and a response and objections to filings and submissions of the HPR. TCC argued an inaccuracy in the statement of account could not invalidate its mechanic's lien and that the master should not grant Beatty's and the HPR's requests for attorney's fees. The HPR filed a motion to strike TCC's response to its filings and submissions from the record, arguing TCC made false assertions and arguments regarding issues the master ruled on already. On January 17, 2021, the individual unit owners filed a motion for summary judgment, arguing there was no genuine issue of material fact as to TCC's mechanic's lien claim because TCC failed to perfect the lien by serving notice to the unit owners within ninety days of the last day of work and as to TCC's breach of contract and equity claims because TCC failed to plead any of the elements needed to assert such claims.

On February 16, 2021, the master issued an order denying TCC's motion to amend the statement of account and motion for attorney's fees. In addition, the master granted TCC's motion to confirm the arbitration award and the HPR's motions to dismiss and for summary judgment, to deposit funds, and for attorney's fees, which it stated it would award in a separate order. The master found TCC was bound by the date given as the last day of work on its sworn statements of account and by the fact that the HPR and certain unit owners admitted in their answer to TCC's allegations in its initial and first amended complaint that the last date of work was March 17, 2016. The master found TCC's mechanic's lien was dissolved because it failed to perfect the lien with ninety days and because the HPR could not be subject to the mechanic's lien by law. The master also held TCC's breach of contract claim against the HPR was decided by arbitration, and to the extent a breach of contract claim against the individual unit owners survived arbitration, TCC failed to state a breach of contract claim against unit owners in its second amended complaint. The master found the arbitration also disposed of TCC's quantum meruit claim. Further, he dismissed TCC's equity claim, which it brought to seek attorney's fees, reasoning the arbitration panel determined no contractual basis existed to award attorney's fees and that the dismissal of TCC's mechanic's lien claim barred any statutory basis to award attorney's fees. The master

confirmed the arbitration award and granted the HPR's motion to deposit funds, finding depositing the arbitration award into the court would stop the accrual of interest. The master denied TCC's motion for attorney's fees because the contract between TCC and the HPR did not provide for attorney's fees and there was no statutory basis for attorney's fees once the mechanic's lien was dissolved. He granted the HPR's motion for attorney's fees because it was the prevailing party in the foreclosure of the mechanic's lien cause of action.

The master also issued an order granting partial summary judgment to Beatty, again finding that TCC's mechanic's lien was dissolved because it failed to timely serve Beatty with notice of the lien within ninety days of March 17, 2016, the last day of work asserted in its initial pleadings and on the face of the lien. The master also held Beatty was entitled to attorney's fees after reviewing the factors from *Jackson v. Speed*.[4] The master stated he reviewed the affidavit of Beatty's counsel and, "*in camera*, detailed time records entered upon his firm's billing software" that reflected "the hours each attorney or legal staff member expended upon each task as described in the narrative billing entry for each task." Later the master issued Form 4 orders awarding Beatty $76,000 in attorney's fees and the HPR and the unit owners other than Beatty $250,553.70 in attorney's fees. TCC filed a motion for reconsideration regarding the award of attorney's fees, which the master denied. In his order denying TCC's motion to reconsider, the master stated he reviewed the unredacted attorney's fees affidavits *in camera*, declined to apply the *Jackson* factors "to each entry for attorney's fees requested," and stated the attorney's fees requested related only to the mechanic's lien cause of action. This appeal followed.

**TCC'S ISSUES ON APPEAL**

I.  Did the master err in finding TCC's lien was not timely served based on the date in the statement of account when all parties were timely served based upon the actual date of the last work?

II. Did the master err in dissolving the lien based upon an error in the statement of account and in denying TCC's motion to amend the statement of account to use the last day of work and not the earlier date of substantial completion?

---

[4] 326 S.C. 289, 308, 486 S.E.2d 750, 760 (1997) (holding courts "should consider the following six factors when determining a reasonable attorney's fee: (1) the nature, extent, and difficulty of the case; (2) the time necessarily devoted to the case; (3) professional standing of counsel; (4) contingency of compensation; (5) beneficial results obtained; and (6) customary legal fees for similar services").

III.   Did the master err in dismissing TCC's lien without allowing TCC discovery?

IV.   Did the master err in holding that a deposit of a judgment into the court would stop contractual interest on the amount owed to TCC?

V.   Did the master err in denying TCC's motion for attorney's fees and TCC's request that confirmation and appeal not occur until adjudication of TCC's claims was final?

VI.   Did the master err in (1) granting the HPR an award of attorney's fees on the foreclosure cause of action and awarding them in excess of $250,000 in attorney's fees, including fees incurred at a time when the foreclosure cause of action was stayed by court order and (2) denying TCC's motion for reconsideration?

VII.   Did the master err in (1) granting Betty Beatty summary judgment as to TCC's lien claims and awarding her $76,000 in attorney's fees as a prevailing party and (2) denying TCC's motion for reconsideration?

## THE HPR'S ISSUES ON APPEAL

I.   Did the circuit court err in failing to vacate the arbitration award when the arbitration panel applied the doctrines of waiver or estoppel to disregard a conditional release and waiver of lien, thereby resulting in a manifest disregard of contract law?

II.   Did the circuit court err in failing to vacate the arbitration award when the arbitration panel exceeded its powers by agreeing to issue a "Reasoned Award" then provided an award steeped in conclusory statements that did nothing but cause confusion and uncertainty within the arbitration process?

III.   Did the master err in failing to modify the arbitration award when the arbitration panel exceed its power by failing to give effect to the lien waiver?

IV.   Did the master err in failing to modify the arbitration award when the arbitration panel exceeded its powers by allocating a portion of the award to costs incurred on another project that was not referred to arbitration and was not a part of TCC's claim?

**STANDARDS OF REVIEW**

"When reviewing the grant of a summary judgment motion, [an appellate] court applies the same standard that governs the trial court under Rule 56(c), SCRCP; summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *S. Glass & Plastics Co. v. Kemper*, 399 S.C. 483, 490, 732 S.E.2d 205, 208-09 (Ct. App. 2012). "In determining whether summary judgment is proper, the court must construe all ambiguities, conclusions, and inferences arising from the evidence against the moving party." *Byers v. Westinghouse Elec. Corp.*, 310 S.C. 5, 7, 425 S.E.2d 23, 24 (1992). "Once the moving party carries its initial burden, the opposing party must come forward with specific facts that show there is a genuine issue of fact remaining for trial." *S. Glass & Plastics Co.*, 399 S.C. at 490, 732 S.E.2d at 209 (quoting *Sides v. Greenville Hosp. Sys.*, 362 S.C. 250, 255, 607 S.E.2d 362, 364 (Ct. App. 2004)).

"An appellate court applies the same standard of review as the trial court when reviewing the dismissal of an action pursuant to Rule 12(b)(6), SCRCP." *Cap. City Ins. Co. v. BP Staff, Inc.*, 382 S.C. 92, 99, 674 S.E.2d 524, 528 (Ct. App. 2009). "In considering a motion to dismiss a complaint based on a failure to state facts sufficient to constitute a cause of action, the trial court must base its ruling solely on allegations set forth in the complaint." *Id.* "The question is whether, in the light most favorable to the plaintiff, and with every doubt resolved in his behalf, the complaint states any valid claim for relief." *Id.* "Dismissal under Rule 12(b)(6) is improper if the facts alleged and inferences reasonably deducible from them, viewed in the light most favorable to the plaintiff, would entitle the plaintiff to relief on any theory." *Id.* "The trial court's grant of a motion to dismiss will be sustained only if the facts alleged in the complaint do not support relief under any theory of law." *Id.*

"An arbitrator's award may be vacated when the arbitrator exceeds his or her powers []or manifestly disregards or perversely misconstrues the law." *Gissel v. Hart*, 382 S.C. 235, 241, 676 S.E.2d 320, 323 (2009). "A court may vacate an arbitration award under the manifest disregard standard only when a plaintiff has shown that: (1) the disputed legal principle is clearly defined and is not subject to reasonable debate; and (2) the arbitrator refused to apply that legal principle." *Jones v. Dancel*, 792 F.3d 395, 402 (4th Cir. 2015). "However, for a court to vacate an arbitration award based upon an arbitrator's manifest disregard of the law, the governing law ignored by the arbitrator must be well defined, explicit, and clearly applicable." *Gissel*, 382 S.C. at 241, 676 S.E.2d at 323. "This standard is met only when the award is the product of an intentional or reckless flouting of the

law, not a mere error in interpreting it."  *Waldo v. Cousins*, 442 S.C. 662, 665, 901 S.E.2d 276, 278 (2024).

"The decision to award or deny attorney['s] fees under a state statute will not be disturbed on appeal absent an abuse of discretion."  *Kiriakides v. Sch. Dist. of Greenville Cnty.*, 382 S.C. 8, 20, 675 S.E.2d 439, 445 (2009).  "An abuse of discretion occurs when the conclusions of the trial court are either controlled by an error of law or are based on unsupported factual conclusions."  *Id.* (quoting *Layman v. State*, 376 S.C. 434, 444, 658 S.E.2d 320, 325 (2008)).  "Similarly, the specific amount of attorney['s] fees awarded pursuant to a statute authorizing reasonable attorney['s] fees is left to the discretion of the trial judge and will not be disturbed absent an abuse of discretion."  *Id.* (quoting *Layman*, 376 S.C. at 444, 658 S.E.2d at 325).  "However, where the issue of the amount of attorney['s] fees awarded depends on the [c]ourt's interpretation of 'reasonable' attorney['s] fees as contained in the [statute], the interpretation of the statute is a question of law that the [c]ourt reviews de novo."  *S.C. Dep't of Transp. v. Revels*, 411 S.C. 1, 8, 766 S.E.2d 700, 704 (2014).

**TCC'S APPEAL**

## I.        Dissolving the Mechanic's Lien[5]

TCC argues the mechanic's lien was timely served and filed because the date of last work was January 23, 2017, not March 17, 2016, and that this was proven by evidence in the record.  It contends the arbitration panel determined the last day of work was January 23, 2017, when it awarded damages for the stone tower, which was not completed on March 17, 2016.  TCC maintains that the issue of the last day of work was res judicata because the circuit court allowed it to amend its initial pleadings to correct the date.  TCC further contends this ruling became the law of the case and was binding on the master.  TCC asserts an error in the date of last work on a statement of account was not a basis for invalidating a mechanic's lien because the day of last work is not required for a statement of account.  TCC argues timely service on the HPR constituted timely service on the unit owners and that the burden on the contractor to serve notice of a mechanic's lien on owners who did not live at the property in question within ninety days of last work prevents a contractor from enforcing its lien rights.  TCC asserts the master erred

---

[5] We address the TCC's Issues I through III together under this heading.

in preventing further discovery to determine how and when the unit owners first received notice of the mechanic's lien and the lawsuit. We disagree.

"Mechanic's liens in South Carolina are purely statutory and may only be acquired and enforced in accordance with the statutes creating them." *Preferred Sav. & Loan Ass'n, Inc. v. Royal Garden Resort, Inc.*, 295 S.C. 268, 271, 368 S.E.2d 78, 80 (Ct. App. 1988), *aff'd*, 301 S.C. 1, 389 S.E.2d 853 (1990).

> A person to whom a debt is due for labor performed or furnished or for materials furnished and actually used in the erection, alteration, or repair of a building or structure upon real estate . . . by virtue of an agreement with ... the owner of the building or structure . . . shall have a lien upon the building or structure and upon the interest of the owner of the building or structure in the lot of land upon which it is situated to secure the payment of the debt due to him.

S.C. Code Ann. § 29-5-10(a) (2007). Under section 29-5-90, a statement of account designating the amount due must be served and filed "within ninety days after he ceases to labor on or furnish labor or materials for such building or structure." "[T]o perfect and enforce the lien against the property, the person claiming it must . . . serve and record a certificate of lien within ninety days after he ceases to furnish labor or materials . . . ." *Shelley Constr. Co. v. Sea Garden Homes, Inc.*, 287 S.C. 24, 27, 336 S.E.2d 488, 490 (Ct. App. 1985).

The North Carolina Court of Appeals has stated, "It is well established that a lien is lost if the steps required to perfect it are not taken in the manner and within the time prescribed by law." *Strickland v. Gen. Bldg. & Masonry Contractors, Inc.*, 207 S.E.2d 399, 400 (N.C. Ct. App. 1974). In *Strickland*, a North Carolina case with similar facts that our supreme court cited in *Preferred Savings*, the appellant stated in his notice and claim of lien that "material . . . was last furnished upon [the] property on March 28, 1973," meaning more than 120 days had passed since the last day of work when he filed the notice on July 27, 1973. *Id*. The North Carolina Court of Appeals found,

> Although the claim of lien filed by plaintiff contains information not required by the statute, it reveals on its face that it was filed more than 120 days after the stonework was last furnished by plaintiff. Thus all potential purchasers or lenders interested in the subject

property and relying on the public record would be advised that the claim of lien had not been filed in accordance with the statute, and was not enforceable against the property.

*Id.* at 400-01.

Section 27-31-230(a) of the Horizontal Property Act states that "[n]o lien arising subsequent to recording the master deed or lease as provided in this chapter, and while the property remains subject to this chapter, shall be effective against the property." The statute goes on to state that "[d]uring such period liens or encumbrances shall arise or be created only against each apartment and the percentage of undivided interest in the common elements appurtenant to such apartment . . . ." *Id.*

When a party files a notice of lien under Section 29-5-90 he is asserting that at a time within ninety days before the notice he has performed work for which he is entitled to assert a lien. . . . Because the party asserts in his notice the work has already been performed, the date of cessation of the labor for which the lienor seeks payment must be a date before the notice of lien is filed and not after.

*Preferred Sav. & Loan Ass'n, Inc.*, 295 S.C. at 272-73, 368 S.E.2d at 81.

We hold the master did not err in dissolving TCC's mechanic's lien based on its failure to serve the lien within ninety days of the last day of labor it provided in its statement of account. *See* § 29-5-90 (stating a lien will dissolve if "the person desiring to avail himself thereof" does not serve and file the statement of account designating the amount due "within ninety days after he ceases to labor on or furnish labor or materials for [the subject] building or structure"). In its initial complaint, first amended complaint, and statement of account, TCC stated the last day of work on the condominium occurred on March 17, 2016. While errors in the statement of account do not invalidate a lien, in this case the last day of work included in the initial complaint, first amended complaint, and statement of account show that TCC failed to serve its mechanic's lien on the individual unit owners within ninety days of the last day of work on the project as the statute required. *See Strickland*, 207 S.E.2d at 400 (finding a lien could not be enforced against a property because the dates included on the notice and claim of lien showed it was not filed within 120 days of the last day of work as required by statute, even though the last day of work was not required information for the notice).

Although TCC amended its complaint a second time to remove reference to the last day of work as March 17, 2016, we hold TCC is bound by the date of last work asserted in its statement of account. *See Kitchen Planners, LLC v. Friedman*, 432 S.C. 267, 279, 851 S.E.2d 724, 731 (Ct. App. 2020) ("Kitchen Planners is bound by the dates asserted in its pleadings and on the face of the lien."), *aff'd as modified*, 440 S.C. 456, 892 S.E.2d 297 (2023). Moreover, we hold TCC cannot assert that the last day of work occurred January 23, 2017—six months after it filed the mechanic's lien in June 2016—because the party filing a mechanic's lien asserts work that has already been performed. *See Preferred Sav. & Loan Ass'n, Inc.*, 295 S.C. at 272-73, 368 S.E.2d at 81 ("Because the party asserts in his notice the work has already been performed, the date of cessation of the labor for which the lienor seeks payment must be a date before the notice of lien is filed and not after.").

Additionally, we hold the issue of the last day of work is not res judicata because the arbitration panel did not make any findings about the last day of work in its original or corrected award. *See Sealy v. Dodge*, 289 S.C. 543, 545, 347 S.E.2d 504, 505 (1986) ("In order to establish a plea of res judicata, three elements must be established: (1) identity of parties; (2) identity of subject matter; and (3) adjudication of the issue in the former suit."). The arbitration panel's inclusion of the cost of the stone tower in its award did not include any discussion of the date of last work. Likewise, the master did not include any findings regarding the last day of work in its order allowing TCC to amend its pleadings. Thus, the issue of the last day of work has not been adjudicated in a previous action. Accordingly, we reject TCC's argument that the last day of work was res judicata.

Further, we hold that service upon the HPR did not constitute service on the individual unit owners, such as Beatty. Because the statute states liens may only be created against each unit and not against the entire property, we hold the unit owners must be timely served to meet the requirements for filing and serving a mechanic's lien even if the HPR was timely served. *See* § 27-31-230(a) ("No lien arising subsequent to recording the master deed or lease as provided in this chapter, and while the property remains subject to this chapter, shall be effective against the property. During such period liens or encumbrances shall arise or be created only against each apartment and the percentage of undivided interest in the common elements appurtenant to such apartment . . . ."); *Shelley Constr. Co.*, 287 S.C. at 27, 336 S.E.2d at 490 ("[T]o perfect and enforce the lien against the property, the person claiming it must: (1) serve and record a certificate of lien within ninety days after he ceases to furnish labor or materials; (2) bring suit to foreclose the lien within six months after he ceases to furnish labor or materials;

and (3) file notice of pendency of the action within six months after he ceases to furnish labor or materials." (citations omitted)).

Next, we hold the master did not err in refusing to permit further discovery to establish when and how unit owners received notice of the lien and cause of action. Section 27-31-230(a) required TCC to file and serve notice of the mechanic's lien on the unit owners. Thus, determining that the unit owners had notice of the lien from another source would have been irrelevant on the issue of whether TCC perfected the lien. *See* § 29-5-90 (stating a lien will dissolve if "the person desiring to avail himself thereof" does not serve and file the statement of account designating the amount due "within ninety days after he ceases to labor on or furnish labor or materials for [the subject] building or structure"). The record shows Beatty did not receive service of notice of the lien until June 22, 2016, which was more than ninety days after the last day of work on March 17, 2016. The process server stated in his affidavit that he was able to serve several unit owners when he gained access to the building on June 22, 2016, but he was unable to serve the majority of the unit owners at that time. The record does not include evidence that TCC served any unit owners with notice of the mechanic's lien within ninety days of the last day of work. Accordingly, we hold the master did not err in finding further discovery was not required to determine when the unit owners became aware of the mechanic's lien.

For the foregoing reasons, we hold the master did not err in finding TCC's mechanic's lien dissolved when it failed to serve the individual unit owners within ninety days of the last day of work asserted on the face of the lien. Accordingly, we affirm the master's denial of TCC's motion to amend its statement of account and grant of the HPR's motions for summary judgment and to dismiss because there was no genuine issue of material fact or theory of law TCC could recover under once the mechanic's lien dissolved. *See S. Glass & Plastics Co.*, 399 S.C. at 490, 732 S.E.2d at 208-09 ("When reviewing the grant of a summary judgment motion, [an appellate] court applies the same standard that governs the trial court under Rule 56(c), SCRCP; summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."); *Cap. City Ins. Co.*, 382 S.C. at 99, 674 S.E.2d at 528 ("The trial court's grant of a motion to dismiss will be sustained only if the facts alleged in the complaint do not support relief under any theory of law.").

## II.      Accrual of Interest

TCC argues the master erred in holding the HPR's payment of the judgment into the court halted the accrual of interest on the judgment because the contract

between the parties provided for interests on late payments and depositing funds into court does not stop contractual interest. It contends the panel did not err in holding TCC to be the prevailing party in arbitration and that the panel's holding bound the HPR. We agree.

Rule 67, SCRCP, provides, in part, "In an action in which any part of the relief sought is a judgment for a sum of money . . . a party, upon notice to every other party, and by leave of court, may deposit with the court all or any part of such sum . . . ." Our supreme court has held that "a judgment debtor's deposit of funds into court pursuant to Rule 67 pending his own appeal stops the accrual of interest on the judgment." *Renaissance Enters., Inc. v. Ocean Resorts, Inc.*, 334 S.C. 324, 326, 513 S.E.2d 617, 618 (1999). However, our supreme court clarified that "a deposit into court pursuant to Rule 67 does not stop the accrual of interest *provided by contract*." *Id.* at 327, 513 S.E.2d at 619. Therefore, we hold the master erred in finding the HPR's payment of the judgment into the court halted the accrual of interest because, here, the interest was contractual. *See id.* (holding "a deposit into court pursuant to Rule 67 does not stop the accrual of interest provided by contract"). Article 15.2 of the contract between TCC and the HPR states "[p]ayments due and unpaid under the [c]ontract shall bear interest from the date payment [was] due." In its order, the arbitration panel noted that article 15.2 of the contract between TCC and HPR provided for interest on payments due and unpaid and found TCC was entitled to recover contractual interest on PCOs 143, 144R, and 146 at a rate of 4%. Thus, we hold the master erred in finding that the HPR's deposit of the arbitration award into the court would stop interest from accruing pursuant to Rule 67, SCRCP.

### III.  Denial of TCC's Attorney's Fees

TCC argues the master erred in denying its motion for attorney's fees because the parties' agreement to arbitrate included language establishing the prevailing party in the arbitration would be entitled to attorney's fees. The basis of TCC's argument is language in the "Fees and Expenses of Arbitrators" section of the parties' agreement to arbitrate, which states "the [a]rbitrators shall assess, in whole or in part, their fees and expenses incurred in connection with the [a]rbitration as a part of their award in accordance with S.C. Code § 15-48-110 [(2005)] and the fee provision contained in the Mechanic's Lien Laws." TCC contends it moved for an award of attorney's fees as the prevailing party as defined by the mechanic's lien laws and that the arbitration agreement included a section stating the arbitrators would award fees in accordance with the mechanic's lien laws. We disagree.

We hold the master did not err in denying TCC's motion for attorney's fees because neither the arbitration agreement nor the contract between TCC and the HPR provided for attorney's fees. *See Blumberg v. Nealco, Inc.*, 310 S.C. 492, 493, 427 S.E.2d 659, 660 (1993) ("The general rule is that attorney's fees are not recoverable unless authorized by contract or statute."). Section 15-48-110 states that "Unless otherwise provided in the agreement to arbitrate, the arbitrators' expenses and fees, together with other expenses, not including counsel fees, incurred in the conduct of the arbitration, shall be paid as provided in the award." We find that arbitration agreement does not account for the payment of attorney's fees for the prevailing party, only the payment of fees and expenses of the arbitrators. Although section 29-5-10(a) allows for an award of attorney's fees to the prevailing party for the costs that arises from enforcing and defending a mechanic's lien, here, the lien dissolved because TCC failed to serve the lien on the unit owners and the HPR was not subject to the lien. Thus, the unit owners prevailed as to the mechanic's lien action. Accordingly, we hold there was no statutory basis for the award of attorney's fees to TCC and the master did not err in denying TCC's motion for attorney's fees for the mechanic's lien claim.

### IV.        The HPR's Attorney's Fees

TCC argues the master erred in awarding attorney's fees to the HPR after erring in invalidating TCC's mechanic's lien. TCC contends that even if this court finds the master did not err in invalidating the lien, the attorney's fees awarded to the HPR are inconsistent with the law because the HPR should only recover fees spent defending the mechanic's lien action. TCC contends the HPR made no effort to differentiate between fees incurred from its efforts to overturn the arbitration award and its pursuit of summary judgment in the mechanic's lien cause of action in its counsel's affidavits, and any fees incurred while the mechanic's lien cause of action was stayed cannot form the basis of the HPR's award for attorney's fees. We reverse the award of attorney's fees to the HPR.

Although the master made specific findings of fact as to the *Jackson* factors when awarding the attorney's fees, we hold the evidence in the record does not support the award of $250,553.70 to the HPR. *See Blumberg*, 310 S.C. at 494, 427 S.E.2d at 661 ("[A]bsent sufficient evidentiary support on the record for each factor, the award should be reversed and the issue remanded for the trial court to make specific findings of fact."). TCC's amended complaint and the HPR's answer to the complaint were filed in 2016, but the mechanic's lien cause of action was stayed from December 30, 2016, until May 1, 2020 while the parties arbitrated. On December 6, 2019, during the stay, the HPR filed a motion for summary judgment,

arguing that the action against it to foreclose the mechanic's lien could not stand because a mechanic's lien could not be filed against the HPR under the Horizontal Property Act.  On September 14, 2020, after the stay was lifted, the HPR filed a motion to dismiss TCC's second amended complaint, arguing a mechanic's lien could not be filed against the HPR; TCC's breach of contract and equity claims should be dismissed for lack of subject matter jurisdiction because they were adjudicated in arbitration; and the mechanic's lien cause of action should be dismissed based on insufficient service of notice of the lien.  The master dismissed TCC's mechanic's lien cause of action.  In the order awarding attorney's fees to the HPR, the master stated he reviewed *in camera* the HPR's attorneys' itemized records detailing the hours each attorney and legal staff member spent working on the foreclosure of the mechanic's lien issue.  However, in the work logs provided to TCC and in the record on appeal, the summaries of the work done in the hours recorded are redacted.  Therefore, we hold the record on appeal does not include evidence to support the master's award of attorney's fees to the HPR.  *See Sunrise Sav. & Loan Ass'n v. Mariner's Cay Dev. Corp.*, 295 S.C. 208, 211-12, 367 S.E.2d 696, 698 (1988) (reversing and remanding for redetermination of attorney's fees because an award of $125,000 was "outrageous and shocking to the conscience of the court" and it was "necessary to take evidence on the reasonableness of the fees").  Accordingly, we reverse and remand the master's award of attorney's fees to the HPR for a hearing regarding the issue of attorney's fees with unredacted attorney's fees affidavits provided to TCC.

## V.      Beatty's Motion for Partial Summary Judgment

TCC argues the master erred granting Beatty's motion for partial summary judgment and awarding her $76,000 in attorney's fees for hours billed between 2016 and 2019, when the foreclosure cause of action for which the master awarded attorney's fees was stayed.  It also contends the master erred in dissolving the mechanic's lien, and the correction of that error will entitle TCC to recover fees.  We disagree.

We hold the master did not err in granting partial summary judgment to Beatty because the lien dissolved when TCC failed to timely serve notice of the lien upon the unit owners.  *See* § 29-5-90 (stating a lien will dissolve if "the person desiring to avail himself thereof" does not serve and file the statement of account designating the amount due "within ninety days after he ceases to labor on or furnish labor or materials for [the subject] building or structure").

However, we hold the master erred in awarding $76,000 in attorney's fees to Beatty's counsel for the mechanic's lien cause of action.  Although the master made

specific findings of fact as to the *Jackson* factors when awarding the attorney's fees, we hold the evidence in the record does not support the award of $76,000 in attorney's fees to Beatty. *See Jackson*, 326 S.C. at 308, 486 S.E.2d at 760 (listing the factors to be considered when determining a reasonable award of attorney's fees); *Blumberg*, 310 S.C. at 494, 427 S.E.2d at 661 ("[A]bsent sufficient evidentiary support on the record for each factor, the award should be reversed and the issue remanded for the trial court to make specific findings of fact."). Beatty filed her pleading on January 17, 2020, over three years after the first amended complaint was filed, and she filed her motion for summary judgment on May 11, 2020, arguing TCC failed to serve her with the lien within ninety days of the last day of work. According to the master's order granting Beatty partial summary judgment, Beatty's counsel presented itemized records of the hours each attorney and legal staff member spent on the case to the master *in camera*, but these itemized records are not included in the record on appeal. After granting her motion for summary judgment and dissolving the lien, the master awarded Beatty $76,000 in attorney's fees. We hold the record on appeal does not include evidence to support the master's award of attorney's fees to Beatty based on factors such as the nature, extent, and difficulty of the case and the time necessarily devoted to the case. *See Sunrise Sav. & Loan Ass'n v. Mariner's Cay Dev. Corp.*, 295 S.C. 208, 211-12, 367 S.E.2d 696, 698 (1988) (reversing and remanding for redetermination of attorney's fees because an award of $125,000 was "outrageous and shocking to the conscience of the court" and it was "necessary to take evidence on the reasonableness of the fees"). Accordingly, we reverse and remand the master's award of $76,000 in attorney's fees to Beatty for a hearing regarding the issue of attorney's fees with the unredacted attorney's fees affidavits provided to TCC.

**THE HPR'S APPEAL**

### I.        Lien Waiver

The HPR argues the circuit court erred in failing to vacate or correct the arbitration award when the arbitration panel disregarded the conditional release and waiver of lien that accompanied Pay Application No. 17 and that TCC signed. It contends the lien waiver was self-authenticated, uncontested, and unambiguous and therefore not enforcing the waiver amounted to a "manifest disregard of the law." The HPR also contends TCC cannot bring an equitable estoppel claim because it cannot prove lack of knowledge or means of acquiring knowledge of the meaning of the unambiguous lien waiver. We disagree.

We hold the circuit court did not err in upholding the arbitration award. *See Grp. III Mgmt., Inc. v. Suncrete of Carolina, Inc.*, 425 S.C. 141, 149, 819 S.E.2d 781,

785 (Ct. App. 2018) ("[T]he scope of judicial review for an arbitrator's decision 'is among the narrowest known at law because to allow full scrutiny of such awards would frustrate the purpose of having arbitration at all . . . .'" (alteration in original) (quoting *Three S Del., Inc. v. DataQuick Info Sys., Inc.*, 492 F.3d 520, 527 (4th Cir. 2007)). The arbitration panel stated that the lien waiver did not bar TCC's claims because "some of the PCOs and TCC's claims for additional costs were subsequently submitted and paid by the HPR which arose and existed as of the date of the execution of the [lien waiver]." The arbitration panel also stated, "Credible testimony at the hearing was presented . . . that TCC and [the] HPR agreed to address outstanding PCOs and TCC's claims for additional costs at the end of the project." The arbitration panel found the HPR could not make payments for claims that may have been otherwise released or barred by the lien waiver then use the lien waiver to circumvent paying TCC for its work. We agree with the circuit court that the arbitration panel's finding that the HPR's payments of the claims overcame the lien waiver did not demonstrate a manifest disregard of the law. *See Gissel*, 382 S.C. at 241, 676 S.E.2d at 323 ("An arbitrator's award may be vacated when the arbitrator exceeds his or her powers []or manifestly disregards or perversely misconstrues the law."). We hold the arbitration panel did not err in finding the nature of the agreement between the parties changed when they became aware of additional work required to complete the project. *See Jones*, 792 F.3d at 402 ("A court may vacate an arbitration award under the manifest disregard standard only when a plaintiff has shown that: (1) the disputed legal principle is clearly defined and is not subject to reasonable debate; and (2) the arbitrator refused to apply that legal principle."). Therefore, we hold the circuit court did not err in upholding the arbitration award because the arbitration panel did not manifestly disregard the law in determining the appropriate award for TCC.

## II.        Reasoned Award

The HPR argues the circuit court erred in failing to vacate the arbitration award when the arbitration panel provided "scant reasoning, few findings of fact, not a single conclusion of law, and no colorable justification for the amount rewarded." Therefore, it contends the panel failed to produce a "[r]easoned [a]ward" as required, and "thereby exceeded its power." We disagree.

*Tully*, a New York case the HPR cites to support its argument regarding the need for a "reasoned award," states, "Many courts in this District have found that a 'reasoned award' requirement means 'that the arbitrator is obligated to present "something short of findings [of fact] and conclusions [of law] but more than a simple result."'" *Tully*, 2015 WL 906128, at *14 (alterations in original) (quoting

*Fulbrook Cap. Mgmt. LLC v. Batson*, 14 Civ. 7564(JPO), 2015 WL 321889, at *5 (S.D.N.Y. Jan. 26, 2015)).  This court has stated, "It is well settled that arbitrators need not specify their reasoning or the basis of the award so long as the factual inferences and legal conclusions supporting the award are 'barely colorable' and if a ground for the award can be inferred from the facts, the award should be confirmed."  *Renaissance Enter., Inc. v. Ocean Resorts, Inc.*, 310 S.C. 395, 399, 426 S.E.2d 821, 823 (Ct. App. 1992).

We hold the circuit court did not err in failing to vacate the arbitration award.  *See Gissel*, 382 S.C. at 241, 676 S.E.2d at 323 ("An arbitrator's award may be vacated when the arbitrator exceeds his or her powers []or manifestly disregards or perversely misconstrues the law."); *Renaissance Enters., Inc.*, 310 S.C. at 399, 426 S.E.2d at 823 ("It is well settled that arbitrators need not specify their reasoning or the basis of the award so long as the factual inferences and legal conclusions supporting the award are 'barely colorable' and if a ground for the award can be inferred from the facts, the award should be confirmed.").  Initially, we note that *Tully*, an unpublished New York case, is not controlling authority in South Carolina.  However, even if *Tully* were controlling, we hold that the findings included in the corrected arbitration award met the requirements of a reasoned award.  *See Tully*, 2015 WL 906128, at *14 ("[A]' reasoned award' requirement means 'that the arbitrator is obligated to present "something short of findings [of fact] and conclusions [of law] but more than a simple result"'"(alterations in original) (quoting *Fullbrook Cap. Mgmt. LLC*, 2015 WL 321889 at *5)).  Moreover, we hold that the findings of the corrected arbitration award meet the requirements for an arbitration award under South Carolina Law.  *See Renaissance Enters., Inc.*, 310 S.C. at 399, 426 S.E.2d at 823 ("It is well settled that arbitrators need not specify their reasoning or the basis of the award so long as the factual inferences and legal conclusions supporting the award are 'barely colorable' and if a ground for the award can be inferred from the facts, the award should be confirmed.").  The arbitration panel's nine-page corrected arbitration award includes findings regarding the scope of TCC's work on the project, an explanation of why the arbitration panel determined the lien waiver did not bar TCC's claims, a correction of TCC's award with an explanation of the calculation of the total award, a denial of attorney's fees without prejudice, an award of arbitrators' fees, and a corrected interest calculation.  Because the arbitration panel made such findings rather than simply stating a result, we hold it provided a barely colorable factual and legal basis for the award.  Therefore, we hold the reasoning set forth in the award was sufficient and the master did not err by refusing to vacate the arbitration award for not being a reasoned award.

### III. Failure to Modify the Award

The HPR argues, in the alternative to vacatur, the circuit court erred in not reducing "the award by the value of all costs TCC claims to have incurred prior to February 8, 2016, but which TCC did not present in or through Pay Application No. 17." It contends that, taking the lien waiver into consideration, TCC's award would be $414,078.71, plus costs incurred after February 8, 2016. The HPR asserts that this court could also remand this matter to the circuit court or arbitration panel for further findings on the cost in alternative to correcting the award itself. We disagree.

We hold the circuit court did not err in affirming the arbitration award without modifying the award. *See* § 15-48-140(a) (stating a court can modify or correct an arbitration award only in the event of (1) "an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award"; (2) an award on a matter not submitted to the arbitrator that may be corrected without affecting the merits of the decision regarding properly submitted issues; and (3) imperfections in the award in "a matter of form, not affecting the merits of the controversy"). The arbitration panel stated it did not believe the lien waiver barred TCC's claims because the HPR "agreed to the PCOs; signed the Change Orders; and made payment for claims that may have otherwise been released or barred by the [lien waiver]." The arbitration panel then awarded damages based on the evidence TCC presented of its work on the project, which included unpaid PCOs, retainage itemized in an exhibit, a portion of the disputed amount, and a portion of the amount requested for the stone tower. The arbitration panel did not miscalculate the figures, award TCC based on matters not submitted to the panel, or provide an imperfect form of award. Therefore, we hold the HPR did not provide evidence of any grounds for modification of the award under section 15-48-140. *See Renaissance Enters., Inc.*, 310 S.C. at 399, 426 S.E.2d at 823 ("It is well settled that arbitrators need not specify their reasoning or the basis of the award so long as the factual inferences and legal conclusions supporting the award are 'barely colorable' and if a ground for the award can be inferred from the facts, the award should be confirmed."). Accordingly, we hold the circuit court did not err in upholding the arbitration award because it was not subject to modification or correction.

### IV. Stone Tower Arbitration Award

The HPR argues the corrected arbitration award is based on costs not submitted to the panel because it included amounts allocated to the stone tower. It argues TCC's claim as related to its work on the stone tower was not referred to arbitration and

did not arise until it was included in the prehearing brief.   The HPR contends there was "no evidence to suggest that the stone tower claim was actually served upon or delivered to the HPR for payment, and the claim was never the subject of any discovery."  The HPR argues any portion of the award based the stone tower claim must be removed because the matter was not submitted to the circuit court or the arbitration panel and the HPR was not on notice of it.  We disagree.

We hold the circuit court did not err in upholding the arbitration award because TCC's work on the stone tower was included in the arbitration agreement.  *See Zabinski v. Bright Acres Assocs.*, 346 S.C. 580, 596, 553 S.E.2d 110, 118 (2001) ("The question of the arbitrability of a claim is an issue for judicial determination, unless the parties provide otherwise."); *id.* at 597, 553 S.E.2d at 118 ("To decide whether an arbitration agreement encompasses a dispute, a court must determine whether the factual allegations underlying the claim are within the scope of the broad arbitration clause, regardless of the label assigned to the claim.").  The arbitration agreement states that "certain disputes have arisen regarding performance and payment on the [p]roject," and defines the project as TCC's contract with the HPR "to perform exterior repairs to Concord & Cumberland located at 175 Concord Street, Charleston, South Carolina."  TCC requested $29,000 in its trial brief filed in the arbitration proceeding because it "was asked to assist with the leaking in the stone tower after the project was complete."  The arbitration panel awarded TCC $23,733.86 for its work on the stone tower, adjusting the amount TCC requested by an inefficiency factor of twenty-five percent.  We hold TCC's work on the stone tower falls within the scope of the arbitration agreement, which stated the project included "exterior repairs to Concord & Cumberland" performed by TCC.  *See id.* at 597, 553 S.E.2d at 118 ("Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."); *id.* ("Furthermore, unless the court can say with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the dispute, arbitration should be ordered.").  Accordingly, we hold the circuit court did not err in affirming the arbitration panel's award of $23,733.86 for TCC's work on the stone tower, and we affirm on this issue.

## CONCLUSION

Based on the foregoing, we affirm the master's order granting the HPR's motions to dismiss and for summary judgment, granting TCC's motion to confirm the arbitration award, and denying TCC's motions to amend statement of account and for attorney's fees.  We also affirm the Master's order granting summary judgment to Beatty.  We reverse and remand the master's award of attorney's fees to the HPR and to Beatty.

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED.**

**GEATHERS and HEWITT, JJ., concur.**